630 So.2d 1345 (1994)
STATE of Louisiana, Appellee,
v.
Gloria Jean GATES, Appellant.
No. 24995-KA.
Court of Appeal of Louisiana, Second Circuit.
January 19, 1994.
Rehearing Denied February 17, 1994.
*1347 Gloria Jean Gates, in pro. per.
*1348 Richard Ieyoub, Atty. Gen., James M. Bullers, Dist. Atty., Bobby L. Stromile, Asst. Dist. Atty., for appellee.
Before SEXTON, NORRIS and STEWART, JJ.
SEXTON, Judge.
Appellant, Gloria Gates, was convicted of the second degree murder of her estranged husband, Larry Gates. She was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. This court granted appellant's out-of-time appeal. In her appeal, Gates raised 356 assignments of error, only eight of which were briefed and thus are before this court for review. U.R.C.A. 2-12.4. We affirm appellant's conviction.
On November 9, 1979, appellant shot her estranged husband at her apartment in Shreveport. She and two male friends put the victim in the trunk of his car and drove to Bossier City. Upon arrival at the Bossier City Landfill, appellant opened the trunk, shot the victim three more times, and abandoned the vehicle at the landfill.
Shortly thereafter, Officer Ron Botica of the Bossier City Police Department was performing a routine patrol of the area near the Texas Street bridge. At around 5:35 a.m., Officer Botica noticed three people, appellant and her two male companions, walking toward the Texas Street bridge. As Officer Botica approached the trio, he noticed appellant's badly torn blouse. Due to the early morning hour and appellant's torn blouse, Officer Botica decided to conduct an inquiry.
At his request, appellant and one of the males stopped. However, the other male, Gerald Haley, continued walking and appeared to be stuffing something in his pants. When Haley finally turned around and stopped, Officer Botica noticed a bulge in Haley's pants. Officer Botica performed a pat-down search and recovered a .38 caliber pistol. Officer Botica also noticed what appeared to be a significant amount of damp blood on Haley's pants. When asked what he was doing with the pistol, Haley would not say anything, nor would appellant or Milton Dias, the other male with them.
Officer Botica proceeded to arrest Haley for carrying a concealed weapon and called for backup at the scene. The trio still refused to give any information or explanation for the blouse, blood, pistol, or their reason for being out on the streets at that early hour. After backup arrived, the officers also decided to take appellant and the third person, a Mr. Dias, to the station for questioning. Officer Dale Soileau, the officer who handcuffed appellant before placing her in the patrol car, later found five spent .38 casings on the grill of the patrol car very near where appellant was standing before she was handcuffed.
As the officers were placing the trio in the cars, Fred Morgan, a local construction worker, came upon the scene and informed Officer Botica that he recently heard three gunshots fired. Morgan said the shots came from the city dump area and that five minutes after he heard the shots, he saw appellant and these two males walking down the levee from the direction of the city dump.
Appellant was then taken to the station. About a half hour later, an officer called in with information that a body had been located in the trunk of an abandoned car at the city dump. Thereafter, at 12:55 p.m., appellant confessed to having shot the victim both in her apartment in Shreveport, and then again at the dump in Bossier.

PROBABLE CAUSE
We initially address appellant's threshold complaint presented by her Assignment of Error No. 5. This assignment contends that she was arrested without probable cause. Specifically, appellant argues that the police did not have probable cause to make an investigatory stop and then to arrest her. Appellant also claims she was never advised of her Fifth and Sixth Amendment rights, and for this reason, any confessions and statements should also have been suppressed.
The right of law enforcement officers to temporarily detain and interrogate persons reasonably suspected of criminal activity is well established. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *1349 State v. Fauria, 393 So.2d 688 (La.1981); State v. Taylor, 363 So.2d 699 (La.1978); LSA-C.Cr.P. art. 215.1. The right to make an investigatory stop must be based on reasonable cause to believe that the suspect has been, is, or is about to be engaged in criminal activity. State v. Washington, 621 So.2d 114 (La.App. 2d Cir.1993); State v. Patterson, 588 So.2d 392 (La.App. 4th Cir.1991); State v. Thibodeaux, 531 So.2d 284 (La.App. 3d Cir.1987). Reasonable cause for an investigatory stop is something less than probable cause, but the officer must have "articulable knowledge" of particular facts which, in conjunction with reasonable inferences drawn therefrom, provide reasonable grounds to suspect the detainee of criminal activity. State v. Flowers, 441 So.2d 707 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984); State v. Washington, supra; State v. Thibodeaux, supra; State v. Rodriguez, 396 So.2d 1312 (La.1981).
Probable cause for an arrest exists when facts and circumstances known to the officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in the belief that the person to be arrested has committed a crime. State v. Wilson, 467 So.2d 503 (La.1985); State v. White, 543 So.2d 124 (La.App. 2d Cir.1989), cert. denied, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985).
It is not a prerequisite for the existence of probable cause that the police know at the time of the arrest that a particular crime has definitely been committed. While knowledge of the commission of a particular crime is frequently an important factor in the determination of probable cause, probable cause may exist when the commission of a crime has not been definitely established. It is sufficient that it be reasonably probable that a crime has been committed under the totality of the known circumstances. State v. Simms, 571 So.2d 145 (La.1990). While it takes more and better evidence to provide probable cause when the police do not know a crime has been committed, probable cause is to be judged by the probabilities and practical considerations of everyday life on which average men, particularly average police officers, can be expected to act. State v. Drott, 412 So.2d 984 (La.1982). Of course, the setting or location is an important consideration.
With respect to her asserted improper detention and arrest, appellant complains specifically that a confession she rendered at the station and the five spent shells, or hulls, are the fruits of a poisoned arrest.
Officer Botica, who made the initial stop, clearly had reasonable grounds to make that stop. He had seen appellant and two males walking toward the Texas Street bridge along the levee at 5:35 in the morning. Appellant's blouse was badly torn. After he approached the three, he found that one of the two males accompanying appellant had a concealed weapon on his person and that there was a large amount of what appeared to be damp blood on his pants. None of the three would offer any information or explanation with respect to these circumstances.
We recognize that it is a close question as to whether Officer Botica's information amounted to probable cause to arrest at the time he and the backup officers placed these parties in the police vehicles. However, we think we need not resolve that issue because almost simultaneously with the parties being placed in the patrol cars, probable cause clearly existed for an arrest.
As appellant was being placed in the patrol car, Fred Morgan, a local construction worker, informed Officer Botica that he had recently heard three gunshots coming from the direction of the Bossier landfill and that soon after he had heard the shots, he saw appellant and these same two males walking down the levee. At this point, we conclude Officer Botica had probable cause to arrest appellant.
As we have already noted, Officer Botica clearly had reason to inquire upon seeing these three individuals being near the city dump at this early hour and observing that the female member of the group had a badly torn blouse. The inquiry took on serious implications upon the officer discovering that one of the three was carrying a concealed weapon and had a great deal of blood on his clothes. Clearly, Officer Botica not only had a right, but a duty to inquire further *1350 at this point. After the other officers arrived, apparently the officers thought they were continuing the investigation by taking the appellant and Dias to the station along with Haley, who had the concealed weapon. However, the law is clear that an arrest occurred at that point. LSA-C.Cr.P. art. 201; State v. Simms, 571 So.2d 145 (La. 1990).
As we have previously noted, though, within just a few minutes, the additional knowledge furnished by Mr. Morgan rendered full probable cause, if such did not exist at the time the appellant was detained. The important point is that if Officer Botica's detention of the appellant did exceed his power to investigate, no prejudice stemmed from that action. It seems clear that if the appellant had not been detained when she was, or even if she had been allowed to proceed at that point, she would have been arrested moments later upon the officers receiving the information Mr. Morgan, furnished. The officers were confronted with an unusual situation indicating that serious violence had likely occurred. They acted in good faith, and no prejudice to appellant flowed from any action of the officers which might have been technically illegal.
Moreover, based on the information given by the construction worker, the body of the victim was located at the Bossier landfill thirty minutes after appellant was taken to the station. Appellant did not give any incriminating statements to the police until well after the body was located.
With respect to the bullet hulls of which appellant also complains, we note that we cannot be certain at exactly what point appellant dropped these shell casings. It is clear, however, that it was prior to the time she was placed in the patrol car, and most likely it was before Officer Soileau handcuffed her. If appellant had abandoned these hulls during or after she had been handcuffed, she would have had to either drop the hulls while being cuffed or have held them in her fist. If she had not already disposed of them, Officer Soileau would most likely have noticed them in her clenched fists while he was cuffing her. Additionally, it seems highly likely that if she had dropped them as she was being cuffed, they would have been observed at that time. Thus, the hulls seem most likely to be the product of the clearly justifiable investigatory stop, and not the subsequent arrest.
Moreover, we note that even if the hulls were abandoned during or after the time appellant was handcuffed, the admission of these hulls into evidence adds little, if anything, to the case against appellant. The incriminating factor is that the bullets obtained from the victim were without question linked directly to the gun which was recovered from Haley.
Appellant also contends in this assignment that her statements and confession were admitted without complying with Miranda. Detective Ricky Spier testified that he advised appellant of her Miranda rights before he interrogated her shortly after appellant first arrived at the station. After receiving information from an officer in the field that a body had been found at the landfill and statements from Haley and Dias that the incident began at appellant's Shreveport apartment, a search warrant was obtained and appellant accompanied Detective Sproles to her apartment while the warrant was executed. Additionally, appellant was read her rights by Detective Don Webber and signed a rights advice card before she went to her apartment with Detective Sproles. Appellant returned to the Bossier station with Detectives Sproles and Spier at approximately 12:45 p.m., at which point she was again read her rights and she gave the statement of which she now complains.
Detectives Webber and Sproles corroborated Detective Spier's testimony. Appellant told the officers that she understood her rights. In their opinion, appellant also appeared to understand them. There were no promises or coercion. Appellant even signed a rights advice card before she made her taped statement later that same evening. Appellant's claim that she was never advised of her rights is strongly contradicted by the record.
This assignment lacks merit.

*1351 VENUE
Appellant's second threshold issue is presented by Assignment of Error No. 8 in which appellant contends that Bossier Parish was a court of improper venue for her trial. Appellant argues that proper venue is in the parish where the crime initially occurred, which would be Caddo Parish.
At the hearing on the motion to quash, the parties stipulated that the victim, Larry Gates, was shot in Caddo Parish, in Shreveport, and subsequently transported to Bossier Parish where he was shot three more times. The parties also stipulated that the Bossier Parish shots were fired while the victim was in the trunk of the vehicle used to transport him and that the Shreveport shots were fired while the victim was in appellant's apartment.
Dr. George McCormick, the Bossier Parish coroner, testified that he had gone to the scene of a homicide at the Bossier City dump where he found a body inside the trunk of a vehicle. The body had blood on it, as did several items in the trunk. The fatal bullet had gone through the victim's back, lung, heart, and sternum before exiting the body. Dr. McCormick determined that the bullets fired in Shreveport were chest wounds, while the bullets fired in Bossier had entered the victim's back. Therefore, the fatal wound was fired in Bossier Parish. Additionally, Dr. McCormick determined that the bullet that went through the victim's heart would have caused instantaneous death. Dr. McCormick found the fatal bullet in the trunk and matched its path with the wound in the victim and a dent in the metal of the trunk.
Dr. McCormick's trial testimony was substantially the same as that at the motion to quash, which was that the fatal bullet was fired into the victim's body while he was lying in the trunk of the car after he had been transported to Bossier City from Shreveport.
Appellant's argument that there was no proof that a substantial element of the offense occurred in Bossier Parish is rendered fatal by LSA-C.Cr.P. art. 611, which provides that "if acts constituting the offense or if the elements of an offense occurred in more than one place, in or out of the parish or state, the offense is deemed to have been committed in any parish in this state in which any such act or element occurred."
Dr. McCormick's testimony was clear that the victim was alive when appellant transported him to Bossier Parish and that he was alive just before she shot him at the Bossier City landfill. Thus, from the record it is clear that the fatal bullet was fired in Bossier Parish. Accordingly, this assignment is without merit.

ERRORS PATENT
Appellant urges this court to review the entire record for errors patent. Appellant states that the trial transcript fails to show the court swore the jury immediately after they were selected; that the jury was not sworn at the time of their sequestration; and that the court released the jury after deliberations with instructions to return to court in the morning.
LSA-C.Cr.P. art. 790 provides that the jury shall be sworn together when the selection of jurors and alternate jurors has been completed. The minutes show the jurors were sworn after they were selected and before any further proceedings were held. Thus, appellant's first claim under this assignment is contradicted by the record.
The second claim also lacks merit as there is no requirement for a subsequent swearing of the jury before it begins its deliberation.
Appellant's final complaint under this assignment with respect to violation of the sequestration provisions of LSA-C.Cr.P. art. 791 is also contradicted by the record. The clear import of the record is that the jury was charged and thus sequestered for deliberations until it reached a verdict. After verdict, the jury was discharged from this case and ordered to return with the entire jury panel the following day for consideration of further matters on the docket.
This assignment of error lacks merit.

*1352 EVIDENTIARY ISSUES
Next, we will consider appellant's Assignments of Error Nos. 2, 3, and 4 which complain of the admission of evidence which was not listed in the state's response to appellant's motion for discovery.
One of appellant's arguments is that she was not advised of the existence of state's Exhibits S-3, S-4, and S-5 and that she was not allowed to examine the same. She therefore asserts she was surprised by the admission of these exhibits into evidence.
The defense motion for discovery contains standard boilerplate language requesting that the defense be allowed to inspect and copy confessions, statements, prior convictions, photographs, tests, and other tangible evidence. The motion does not ask the state to produce and list each item of physical evidence. The state's answer advises that defense counsel can inspect and copy as requested by scheduling a date and time. At the hearing on the motion to quash, defense counsel advised the court that the state's answer to the discovery motion was satisfactory and the court concurred.
At trial, the state offered Exhibits S-3, S-4, and S-5 through Officer Barnette. The photos showed the condition of the car and how the victim's body was in the trunk when the officer first found him. Defense counsel objected on the ground that he had not been informed by the state of the existence of the pictures. The court overruled the objection.
The state is not required to provide a detailed list of all the evidence in its possession. The state's response that a defendant will be allowed to inspect the state's evidence at his convenience is adequate compliance with the discovery articles, LSA-C.Cr.P. arts. 718 and 719. State v. Lewis, 478 So.2d 665 (La.App. 2d Cir.1985); State v. Hooks, 421 So.2d 880 (La.1982). Furthermore, when the state has agreed to allow the defendant to inspect and copy, the defendant's failure to inspect does not render the evidence inadmissible. See State v. Harriman, 469 So.2d 298 (La.App. 2d Cir.1985), writ denied, 474 So.2d 1304 (La.1985), cert. denied, 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986).
Appellant also contends that the trial court erred in overruling her objection to Dr. McCormick's testimony in which he referred to photographs he had not taken, and further asserts the state failed to inform the defendant of the existence of the photographs.
It should be noted that during Dr. McCormick's testimony at the hearing on the motion to quash, he testified that his office had photographs pertinent to the investigation. Thus, the second prong of this assignment, nondisclosure, lacks merit for the reasons previously discussed.
The prong concerning who took the pictures also lacks merit. Photographs are admissible when they illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place, or thing depicted. State v. Kirkpatrick, 443 So.2d 546 (La.1983), cert. denied, 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984); State v. Eason, 460 So.2d 1139 (La.App. 2d Cir.1984), writ denied, 463 So.2d 1317 (La. 1985). No further foundation is necessary. State v. Lewis, supra. Dr. McCormick testified that the pictures accurately depicted what they purported to portray.
Also, with respect to evidence admitted at the trial, appellant contends that the trial court erred in overruling the defense objection to the admissibility of two bullets recovered from the wall in appellant's apartment. She again argues the failure to identify these items in discovery. Here, she also broadly argues of the failure to give proper notice of confessions, statements, photographs, evidence of other crimes, and her prior criminal record. Obviously, the argument with respect to failure to disclose the bullets lacks merit for the reasons previously discussed, i.e., the state discovery response made the state's evidence readily available to the defense. We will consider her position with respect to evidence of other crimes and/or her prior criminal record in our discussion of Assignment of Error No. 7 which follows.
Accordingly, for the reasons aforesaid, the three assignments of error dealing with evidentiary issues all lack merit.

*1353 PRIOR CRIMINAL RECORD
Appellant's Assignment of Error No. 7 contends the trial court erroneously overruled her objection to "other crimes committed." She specifically complains that the prosecutor impeached her testimony on "other crimes committed" by asking her, during cross-examination, if she had been charged with and convicted of any felonies.
However, LSA-R.S. 15:495, in effect at the time of defendant's trial, permitted impeachment of any witness by evidence of prior felony convictions. State v. Nash, 475 So.2d 752 (La.1985). The state's responses to discovery show appellant was apprised of her prior convictions. There was no surprise. The state was entitled to use the prior convictions as impeachment material. This assignment lacks merit.

PRELIMINARY EXAMINATION
Finally, we consider appellant's Assignment of Error No. 6 that the trial court erroneously deprived her of a preliminary examination.
This prosecution was initiated by grand jury indictment. Under such circumstance, a preliminary examination is discretionary with the trial court. LSA-C.Cr.P. art. 292. The record does not indicate that appellant even moved for a preliminary examination. Moreover, the conviction of appellant moots any failure to provide a preliminary examination in the absence of any prejudice. State v. Washington, 363 So.2d 509 (La.1978). Appellant has suggested none. This assignment of error lacks merit.

CONCLUSION
Defendant included in her brief a motion requesting this court to conduct an evidentiary hearing and to suppress all evidence which was admitted against her at trial. As we are aware of no authority for such a procedure, this motion is denied.
Having determined that all of appellant's assignments of error lack merit, appellant's conviction is affirmed.
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, NORRIS, LINDSAY and STEWART, JJ.
Rehearing denied.