# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-30 consolidated with 04-57


**STATE OF LOUISIANA**

**VERSUS**

**CYNTHIA ANDERSON**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 66,513FA
HONORABLE JOHN LARRY VIDRINE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, C.J., Glenn B. Gremillion, and John B. Scofield, Judges.

                                                    **AFFIRMED.**


**Alex D. Chapman, Jr.**
**801 West Lincoln Road**
**Ville Platte, LA 70586**
**Telephone: (337) 363-2229**
**COUNSEL FOR:**
        **Defendant/Applicant - Cynthia Anderson**

**Christopher Brent Coreil**
**District Attorney, 13th Judicial District Court**
**Trent S. Brignac**
**P. O. Drawer 780**
**Ville Platte, LA 70586**
**Telephone: (337) 363-3438**
**COUNSEL FOR:**
        **Plaintiff/Respondent - State of Louisiana**

THIBODEAUX, Chief Judge.

On October 14, 2003, the Defendants, Cynthia Anderson and Larry Surratt, were jointly charged by bill of indictment in Evangeline Parish for the murders of Lawrence Cook and Sheila Kirby. Both Defendants filed motions to quash, alleging that the indictment did not indicate the place of commission of the offenses. After a hearing, the trial court issued a ruling denying the motion to quash. The Defendants filed separate applications for writ of review. These two writs were consolidated because they both challenge the trial court's ruling on the motion to quash.

We deny both writs for the following reasons.

I.

## ASSIGNMENTS OF ERROR

The Defendants contend that the State did not prove the elements of the crime occurred in Evangeline Parish as required by La.Code Crim.P. art. 615. Defendant Anderson contends that the grand jury indictment should be quashed and the investigation taken over by the District Attorney's Office in St. Landry Parish.

Defendant Surratt alleges four assignments of error, all attacking the trial court's ruling on the motion to quash. First, he contends that the State did not meet its burden of proving Evangeline Parish is the proper venue. Next, Surratt claims the trial court erred in relying on a Mississippi case because in that state, the burden of proof is on the defendant to prove venue is improper. Third, he claims that the evidence proved that Evangeline Parish was not a proper venue. Finally, he contends that the trial judge erred in trying to find a venue. Surratt explains that it is not the trial court's duty to establish where venue is, but only to determine whether Evangeline Parish is a proper venue. He is of the opinion that St. Landry seems to

1

have "more indicia of being a proper venue," but he contends that is an issue for a St. Landry Parish court to decide.

## II.

### FACTS

At the hearing on the motion to quash, the court heard the testimony of two witnesses. Detective Joe Demourelle of the Evangeline Parish Sheriff's Office testified that his office was contacted by the Rapides Parish Sheriff's Office about a body floating on the Evangeline Parish side of Bayou Cocodrie. Detective Demourelle explained that Bayou Cocodrie is the parish line. The body was "off of Highway 167 . . . near off the side of the bridge which crosses Bayou Cocodrie. . . ."

Detective Demourelle testified that two young boys found the body and one of the boys called his father, who worked in Rapides Parish. The boy's father then contacted 911 and was connected to Rapides Parish authorities. According to Detective Demourelle, the Rapides Parish authorities did not go out to the body. Once they determined it was on the Evangeline Parish side, they contacted the authorities of that parish.

According to Detective Demourelle, at the time the body was found, the water was "out the bayou banks" and was floating toward the Evangeline Parish side, approximately thirty to forty feet from the bayou itself. If the bayou had been within its banks, the body would have been on dry land in Evangeline Parish. The body recovered from the bayou was later determined to be that of Larry Cook. The victim's body had been mutilated and the legs cut off. The legs were not contained in the box with the rest of the body. One week later, when the water receded, officers returned to the area in an attempt to locate the victim's legs. The Rapides Parish Sheriff's Office and Wildlife and Fisheries launched boats and approximately forty minutes into

2

the search, they located another box containing a second body, that of Sheila Kirby. Detective Demourelle testified that he was not involved in the search, so he did not know the exact location where her body was found. Upon being informed that the body had been found, he drove to the area and walked down to the bayou. At that point, the body was on the bank on the Evangeline Parish side. However, he testified that there was no question that the box containing the second body was found floating in Bayou Cocodorie and it was his understanding that the body was found on the Evangeline Parish side.[1] An autopsy indicated that both victims had been shot.

According to Detective Demourelle, on the Rapides Parish side there is a blacktop road that goes down to a boat launch. He confirmed that the road can be reached from Highway 167 and the road parallels the bayou for approximately 200 or 300 yards. There is an area to park vehicles and to launch boats. This location is approximately a mile from Interstate 49.[2] According to Detective Demourelle, the closest boat launch to Interstate 49 is on the Rapides Parish side and that side is more developed than the Evangeline side. Detective Demourelle agreed that there is no vehicular access to the bayou on the Evangeline Parish side; however, he later explained that when the area is dry, one can drive a vehicle and trailer down to the Evangeline Parish side and launch a boat, as authorities did in this case. Detective Demourelle acknowledged that the containers could have either been dropped over the side of the bridge or taken to the boat launch and thrown in at that point. Detective Demourelle was asked if the easiest way to the disposal site would be the blacktop road from 167 to the Rapides Parish boat launch. He replied that it would probably

---

[1]After Detective Demourelle's testimony, defense counsel for Larry Surratt stipulated that the boxes containing the bodies were found on the Evangeline Parish side. Thus, the State presented no further testimony or evidence on this issue.

[2]Detective Demourelle was asked if it was "approximately a mile to a mile and a half from Interstate 49," and he replied, "[y]es, and I'm not sure the exact distance. It's not a very long distance. It might be less than a mile."

be easiest to throw the bodies off the bridge, but if the Defendants were going to use a boat launch area, the only boat launch area would be on the Rapides side.

Detective Demourelle testified that he saw Mr. Cook's body and he was wearing a tee shirt that said "Catfish Festival" and "Washington, Louisiana." The last known address of the victims was a trailer in Lawtell, Louisiana, which was the clubhouse of the Banshee Motorcycle gang. Detective Demourelle was told the victims had lived there since the end of October. Before that, they lived in the Morrow area. Both Lawtell and Morrow are in St. Landry Parish. Detective Demourelle testified that to his knowledge, the victims had not lived or worked in Evangeline Parish and did not have any relatives there. He testified that there was no connection between the victims and Evangeline Parish. Detective Demourelle testified that the Evangeline Parish Sheriff's Office did not conduct any investigation at a physical site in that parish except at the scene. Although they checked a house in the Basile area looking for an individual, it was not checked as a site where the victims lived. There was no investigation of any site in Evangeline Parish where the deceased had been reported to have been. He acknowledged that the "totality of the investigation" as to where the victims were just before their deaths was in St. Landry Parish. Additionally, when asked if any element of the crime had occurred in Evangeline Parish, Detective Demourelle responded that it was where the bodies were found.

During the investigation, the victims' pet dog was found along a bayou in the Morrow area; it had been shot in the head. Detective Demourelle acknowledged that there was a possible connection between this and the murders. Also, there were two chainsaws there that were analyzed as part of the investigation of the case. Neither was found in Evangeline Parish and one of them was found near the bayou where the dog was found. Detective Demourelle was then asked if there was anything

4

that connected the crime to Evangeline Parish and he responded that the bodies had been found there.

At the close of Detective Demourelle's testimony, the following exchange took place:

> Q.   Mr., didn't you, uh, as chief investigating officer, did you give your opinion to the newspaper as to whether or not you thought this had happened in this parish, and a matter of fact you said you did not think that the murders had happened in this parish?
>
> A.   Uh, strictly an opinion.
>
> Q.   Yes,
>
> A.   I said I didn't think that it happened in this parish.
>
> Q.   And is that still your opinion as chief investigating officer of this case?
>
> A.   Well, I gonna reserve my opinion unless you let me voice my opinion in the trial.
>
> Q.   Ah, well let me just say that was your opinion before . . . .
>
> A.   Yes.
>
> Q.   Has it changed?
>
> A.   Uh, I'll reserve uh,
>
> Q.   Okay, alright, I don't want to put you on the spot, sorry.

Ronald Davidson was called as a witness by the defense. He is a member of the same motorcycle club of which the victims were members and he had known Lawrence Cook for approximately twenty-four to twenty-five years prior to his death. According to Mr. Davidson, Mr. Cook had never lived in Evangeline Parish and he had resided in Lawtell at the clubhouse since October of 2002. Prior to that time, he had lived in Morrow. At the time of his death, Mr. Cook had just gone to work as a disc jockey at Willie's Campground in Washington. According to Mr. Davidson,

5

most of Mr. Cook's time was spent in St. Landry Parish. Mr. Cook and Ms. Kirby had a dog that was like their child, and the dog was very dedicated to Mr. Cook. Mr. Davidson testified that he could not imagine them being separated unless something had happened.

Detective Demourelle testified that an autopsy revealed the victims had been shot and that Mr. Cook's legs had been cut off, but were not in the container with his body. Ms. Kirby's legs were found in the container in which her body was found. During the course of the investigation, two chainsaws were analyzed. One was found near the bayou where the dog was found. Neither was found in Evangeline Parish. Although it is reasonable to conclude that the victims were shot before their bodies were dismembered, and that chainsaws were used to dismember the bodies, there was no testimony to establish these exact facts. However, in his ruling, the trial judge stated that Detective Demourelle testified that the victims were shot before their bodies were mutilated by having their legs cut off by an instrument, presumed to be a chainsaw, and that there was no evidence linking the chainsaws found in Morrow to the mutilation of the bodies.

At the close of the hearing, the judge took the matter under advisement. Although the State did not know where the crime occurred, the judge did not agree that the Defendants should be released. He relied on a Mississippi Supreme Court case that held that the finding of a dead body in a particular county raises a presumption or supports an inference that the crime occurred in that county. The judge denied the motion to quash, noting that a decision to the contrary would invite criminals to commit the "perfect crime" by committing murders in secluded places and dumping the bodies in random locations.

6

# III.

## LAW AND DISCUSSION

Louisiana Constitution Article 1, § 16 states in pertinent part:

> Every person charged with a crime is presumed innocent until proven guilty and is entitled to a speedy, public, and impartial trial in the parish where the offense or an element of the offense occurred, unless venue is changed in accordance with law.

The articles of the Code of Criminal Procedure at issue are 611, 613 and 615. Louisiana Code of Criminal Procedure Article 611 states:

> All trials shall take place in the parish where the offense has been committed, unless the venue is changed. If acts constituting an offense or if the elements of an offense occurred in more than one place, in or out of the parish or state, the offense is deemed to have been committed in any parish in this state in which any such act or element occurred.

Louisiana Code of Criminal Procedure Article 613 states:

> When a river, bayou, lake, water course, or other body of water is the boundary of any parish, the jurisdiction of the court of such parish extends to the middle of such river, bayou, lake, water course, or other body of water.

Finally, La.Code Crim.P. art. 615 states:

> Improper venue shall be raised in advance of trial by motion to quash, and shall be tried by the judge alone. Venue shall not be considered an essential element to be proven by the state at trial, rather it shall be a jurisdictional matter to be proven by the state by a preponderance of the evidence and decided by the court in advance of trial.

An extensive search has revealed no Louisiana cases factually on point. We note that both Defendants cite *State v. Gates*, 24,995 (La.App. 2 Cir. 1/19/94), 630 So.2d 1345, *writ denied*, 94-0640 (La. 6/17/94), 638 So.2d 1091, in support of their position. Defendant Anderson cited *Gates* as authority for saying that "the locale where the bodies were found is not listed as an element of a kidnap and murder crime." Defendant Surratt cites it for his assertion that placing the corpses in boxes

7

and placing them in the river is not an element of murder. *Gates* is not applicable in this case.

In *Gates*, the defendant contended on appeal that Bossier Parish was the improper venue for her trial because the crime initially occurred in Caddo Parish. The parties stipulated that the victim was first shot in Caddo Parish in the defendant's apartment. The victim was then transported to Bossier Parish, where he was shot three more times while in the trunk of the vehicle being used to transport him. The coroner testified that he went to the scene where the body was found, which was in the trunk of a vehicle at the Bossier City dump. He determined that the fatal shot was fired in Bossier Parish while the victim was lying in the trunk after he had been transported to Bossier City. The second circuit, relying on La.Code Crim.P. art. 611, rejected defendant's argument that there was no proof that a substantial element of the offense occurred in Bossier Parish. *Gates* lends no guidance in the present case because it is not clear where any of the elements of the crimes occurred.

In *State v. Cupit*, 508 So.2d 996 (La.App. 2 Cir.), *writ denied*, 514 So.2d 1174 (La.1987), the defendant claimed the state did not prove at trial that the offense occurred in Richland Parish. The victim's body was found on the Richland Parish side of a canal which formed the boundary between Ouachita and Richland Parishes. The defense challenged the venue both before and during the trial. It presented the testimonies of the Richland Parish coroner, deputy sheriff, and an expert in forensic pathology, each of whom were of the opinion that the victim was killed at another location. At both proceedings, the state presented evidence to prove the victim was killed in Richland Parish, including the defendant's statement that the offense occurred in that parish and the testimonies of various experts and other witnesses who were of the opinion the crime occurred in Richland Parish. Their opinions were based on such facts as the lack of blood streaks on the body, the fact the victim's hand was

8

clutching the grass beneath him, the recovery of a human tooth attached to a jaw bone in the area beneath the body, the blood spatters found on the grass around the body, the condition of the grass around the body, and, finally, the fact that the ground beneath the body was saturated with blood. The second circuit found the defendant's argument lacked merit considering the ample evidence presented by the state to establish Richland Parish as a proper venue.

In both of the foregoing cases, there was evidence presented to establish where the crimes occurred. Here, there was nothing presented at the hearing that could establish where any element of the crimes occurred. In its brief to this court, the State noted:

> Unfortunately there is no evidence to prove where the victims were murdered. There is only the speculation and conjecture of defense counsel that they were murdered in St. Landry Parish.
>
> There is ample evidence to prove that they were murdered and, the State maintains, ample evidence to prove that the defendants committed the murders.

The State further provided the following hypothetical situation for this court's consideration:

> Hypothetically speaking, consider a murderer showing up at the Lake Charles Police Station with the dead body of a hitchhiker in the trunk of his car, producing the murder weapon and confessing to the murder. What happens then, if the murderer maintains the murder was not committed in Calcasieu Parish and refuses to divulge where the murder was committed. Furthermore, what if there is no evidence to indicate where the murder was committed.
>
> According to the logic and contentions of the defendants herein, this murderer must be allowed to go free because there is no proper venue for his trial. . . . In such cases, venue is proper in the parish where the bodies of the victims are initially found.

We recognize that this court is not bound by Mississippi case law; however, the case relied upon by the trial judge offers some guidance on the issue. In

*State v. Fabian*, 263 So.2d 773 (Miss.1972), the trial court held that it did not have jurisdiction over the murder case because it was not shown beyond a reasonable doubt that the shots which killed the victim were fired in Mississippi. The victim's body was found in Mississippi and he died as a result of two gunshot wounds fired from a pistol. In adopting the rule that the finding of a dead body in a county creates a presumption that the murder occurred there, the Mississippi Supreme Court stated:

> In other jurisdictions the rule has been announced that the finding of a dead body in a particular county raises a presumption, or supports an inference, that the killing took place there. Another well known presumption is that life, like any other condition, continues until there is evidence to the contrary. We adopt both presumptions as a rule in Mississippi.

> In United States v. Rees, 193 F.Supp. 849 (Md.1961) the United States District Court stated:

>> The evidence justifies the inference that both Mrs. Jackson and Susan were killed at or near the spot where they were buried.

>> That inference is aided by a number of presumptions. The first is the reasonable presumption, generally recognized, that a person died in the state and country where his body was found. In Breeding v. State, 220 Md. 193, at page 200, 151 A.2d 743, at page 747, the court said: "Finally, the appellant contends that the State failed to prove that the killing took place in Caroline County or in Maryland. It is true that the State of Maryland cannot punish for a crime committed in another state, Bowen v. State, 206 Md. 368, 111 A.2d 844. But venue may be established by circumstantial evidence. The cases hold that the finding of a dead body in a particular county raises a presumption, or supports an inference, that the killing took place there." Some of the authorities speak in terms of venue, rather than jurisdiction but it is clear that the prosecution must show that the crime was committed in the state as well as in a particular county, and the facts support the inference of the one as well as of the other. See People v. Peete, 54 Cal.App. 333, 202 P.

10

> 51, 64; Commonwealth v. Costley, 118 Mass.
> 1, 26; Hawkins v. State, 60 Neb. 380 83 N.W.
> 198; Wharton on Homicide, 3d ed., 1907, pp.
> 901-2.
>
> There is also the presumption that life,
> like any other condition, continues until there
> is evidence to the contrary.
>
> In 22 C.J.S. Criminal Law § 185(17) the rule is stated
> as follows:
>
>> Aside from any statutory provision, the
>> finding of the body in a county would warrant
>> a finding that the murder was committed in
>> that county. One should not be permitted to
>> escape punishment for murder because he is
>> clever enough to conceal the place where the
>> victim was killed or died.
>
> The presumption that death occurs where a body is
> found coupled with the other evidence heard by the court
> was sufficient to establish the venue of the crime in
> Marshall County, Mississippi. The proof of venue was by
> circumstantial evidence.

*Id.* at pp. 775-76 (footnotes omitted).

As mentioned previously, Defendant Surratt takes issue with the trial court's reliance on the *Fabian* case because the burden in Mississippi is upon the defendant to prove venue is not proper. In Louisiana, the burden is on the State to establish venue. He notes that the Mississippi Supreme Court found the defendant had presented no evidence and that his motion was properly denied. Additionally, Surratt quotes the Mississippi court as saying, "In the present case, the court correctly overruled the motion of accused because of his refusal to offer any evidence whatever."

What Defendant Surratt fails to mention is that in *Fabian*, the trial court inquired into the jurisdictional issue on its own motion after the defendant refused to offer evidence in support of the motion. It is true that the supreme court held that the defendant had the burden of proof and that his failure to provide proof in support of

11

his motion resulted in his motion being properly overruled. However, the supreme court went further, noting that the lower court had, in an exercise of judicial discretion, inquired preliminarily into the question of its jurisdiction. The supreme court held that in such a situation, "the court need only determine that there is relevant and competent evidence supporting the allegations of the indictment with respect to venue and that this evidence is sufficient to warrant submission of the issue to the jury for determination. This is true, of course, where countervailing evidence is offered." *Id.* at 775. The court added, "If there is no evidence whatever supporting the allegation of venue, then the court will dismiss the case for that reason without prejudice to try the case in the court having venue." *Id.* The supreme court noted the procedure was novel and should be permitted only in exceptional circumstances. It then went on to consider the evidence from the hearing to determine if the lower court erred in holding that the state failed to prove that the victim was killed in Marshall County. In doing so, it adopted the presumption or inference discussed above.

The *Fabian* decision is not binding on this court, but its reasoning and conclusion should not be found inapplicable on the grounds advanced by Defendant Surratt.

*Bossette v. Walker*, 41 F.3d 825 (2 Cir. 1994), *cert. denied*, 514 U.S. 1054, 115 S.Ct. 1436 (1995), is a federal case where the court found that the location where the victim's body was found was the proper venue. The *Bossette* court held "the jury could reasonably have inferred that McGirth was killed where his body was found." *Id.* at 830. The body was discovered in the woods near a state highway in Suffolk County, New York. There was no discussion regarding the location where the crime could have occurred. There was evidence presented that one of the appellants had threatened to kill the victim and after the murder, two of the appellants made

12

incriminating statements concerning their involvement in the crime. The court cited no authority for its finding.

In a civil case, this court has applied the presumption of the continuation of life. In *Fontenot v. Southern Farm Bureau Casualty Insurance Co.,* 304 So.2d 690 (La.App. 3 Cir. 1974), *writ denied*, 307 So.2d 640 (La.1975), the decedent was struck by a hit-and-run driver and later by a second vehicle as he was lying in the road. One of the issues to be determined was whether the decedent died before being struck by the second automobile. Finding the medical evidence presented in the case inconclusive, this court applied the presumption of the continuation of life in determining that the death resulted from the second accident.

It was not established that any element of the offenses took place in Evangeline Parish. Furthermore, Louisiana law does not address the present situation of when it cannot be determined where the crime actually occurred. "Where the law is silent, it is within the inherent authority of the court to fashion a remedy which will promote the orderly and expeditious administration of justice. La.Code Crim.P. art. 17; *State v. Edwards*, 287 So.2d 518 (La.1973)." *State v. Mims*, 329 So.2d 686, 688 (La.1976). The venue articles require the prosecution of the case in the parish where the crime has been committed. If the location cannot be determined, it would serve as an injustice to hold that since the State could not establish the exact geographical location of a murder, an accused cannot be tried. The Louisiana Code of Criminal Procedure does not address the factual circumstances presented by this case. Therefore, this court must fashion a remedy which promotes the administration of justice. The testimony indicates both victims were found in Evangeline Parish. Both victims had been shot and their legs cut off. Other testimony was introduced to establish that the victims lived in St. Landry Parish and the pet of one of the victims was found in St. Landry Parish dead from a gunshot wound. However, the crime

13

scene of the murders has not been located. As noted, Defendants raised objections to venue in Evangeline Parish arguing that the State failed to meet its burden of proving that any of the elements of the crime of first degree murder occurred in that parish. There is no question that the bodies were found in Evangeline Parish. There is also no question that the condition of the bodies, when found, indicate that the deceased did not die from natural causes, but in fact met their deaths in a violent manner.

Louisiana Code of Criminal Procedure Article 3 provides that "[w]here no procedure is specifically prescribed by this Code or by statute, the court may proceed in a manner consistent with the spirit of the provisions of this Code and other applicable statutory and constitutional provisions." While La.Code Crim.P. art. 611 provides generally for venue in criminal cases by placing the burden on the State to prove venue by a preponderance of the evidence, it does not provide for the unique situation where the body of a person is found that is apparently the victim of a homicide in a particular parish, yet there is no evidence of where the offense occurred. Louisiana Constitution Article 1, § 16 provides in part that "Every person charged with a crime . . . is entitled to an impartial trial held in the parish where the offense or an element of the offense occurred." An element of first degree murder is the "killing of a human being." La.R.S. 14:30. It is obvious in this case that the condition of the bodies of Mr. Cook and Ms. Kirby, found in Evangeline Parish, indicate that they were killed. The trial court could logically infer that Mr. Cook and Ms. Kirby were killed where their bodies were found. Further, pursuant to the authority of La.Code Crim.P. art. 3, it would serve the orderly administration of justice for this court to adopt the presumption that the killing of Mr. Cook and Ms. Kirby occurred in Evangeline Parish, where their bodies, the condition of which indicate foul play, were found and, therefore, venue is proper in Evangeline Parish. To reason otherwise would allow the absurd result of permitting the suspected perpetrators of the murders

14

to escape trial because they had the mental acuity to conceal the place where any acts of the offense occurred.

## IV.

## <u>CONCLUSION</u>

For the above reasons, the judgment of the trial court is affirmed.

**AFFIRMED.**