JILLIAN DURAN

VERSUS

GEORGE SILVA, STATE
FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY AND ROB'S AIR
CONDITIONING & HEATING,
INC.

* NO. 2019-CA-0748

*

* COURT OF APPEAL

* FOURTH CIRCUIT

* STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2016-05183, DIVISION "N-8"
Honorable Ethel Simms Julien, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Chief Judge James F. McKay, III, Judge Paula A. Brown, Judge Dale N. Atkins)

Charles M. Thomas
Mary E. Schonekas
HUBER THOMAS & MARCELLE, LLP
1100 Poydras Street, Suite 2200
New Orleans, LA 70163

COUNSEL FOR PLAINTIFF/APPELLANT

Michele Trowbridge Barreca
PORTEOUS HAINKEL & JOHNSON, L.L.P.
704 Carondelet Street
New Orleans, LA 70130

COUNSEL FOR DEFENDANT/APPELLEE

AFFIRMED
MARCH 25, 2020

DNA
JFM
PAB

This is a personal injury case that arises out of a bicycle and automobile accident. Appellant, Jillian Duran ("Ms. Duran") and Appellee, George Silva ("Mr. Silva") were involved in an accident on Christmas Eve in 2015. While riding her bicycle to work through the French Quarter, Ms. Duran was struck by Mr. Silva, who was driving a van owned by his employer, Rob's Air Conditioning & Heating, Inc. ("Rob's HVAC").

Ms. Duran filed a personal injury lawsuit against Mr. Silva, Rob's HVAC, and State Farm Mutual Automobile Insurance Company, Rob's HVAC insurance carrier, (collectively "Appellees"), for injuries she sustained from the accident. On May 1, 2019, the trial court rendered judgment in favor of Appellees, dismissing Ms. Duran's lawsuit with prejudice. Ms. Duran now appeals. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of December 24, 2015, Ms. Duran was traveling by bicycle to her place of employment at Bittersweet Confections, Inc., located at 725 Magazine Street, New Orleans, Louisiana. On the way, she was struck by Mr. Silva, who was driving a 2008 Chevrolet Express van owned by his employer,

1

Rob's HVAC at the intersection of Ursuline and Decatur Streets in the French Quarter. As a result of the accident, Ms. Duran sustained several injuries, including a broken shoulder and two tears to her rotator cuff tendon.

On May 23, 2016, Ms. Duran filed a personal injury lawsuit against Mr. Silva, State Farm Mutual Automobile Insurance Company, and Rob's HVAC. A bench trial commenced on April 17, 2019, during which three witnesses testified: Ms. Duran, Mr. Silva, and New Orleans Police Department Officer Andrew Harrelson ("Officer Harrelson"), the investigating officer. The deposition of Ms. Duran's expert accident reconstructionist, Woodrow Poplin ("Mr. Poplin"), was also introduced into evidence at trial.

### Ms. Duran's Testimony

Ms. Duran testified that she normally traveled through the French Quarter from North Peters Street to Barracks Street and then down Decatur Street to get to work. Ms. Duran stated there was construction on Barracks Street on the day of the accident, which prompted her to take an alternate route and required her to turn from Barracks Street and travel down French Market Place, which comes to a dead end at Ursuline Street. Ms. Duran testified that she was traveling the wrong way on Ursuline Street, a one-way street, before making a left turn on Decatur Street. She testified that she traveled about "five or six seconds" on the left side of Decatur Street when she was struck from behind by Mr. Silva's van. Ms. Duran testified she sustained injuries when Mr. Silva's van struck her right shoulder and right handlebar, which caused her to drag along the side of the van for a short distance before she fell to the ground. She testified she did not see Mr. Silva's van prior to the collision.

2

### Mr. Silva's Testimony

Mr. Silva testified that he was driving the 2008 Chevrolet Express van on the day of the accident. He testified he was on his way to his place of employment at Rob's HVAC, located in Harvey, Louisiana, traveling from his home located in Chalmette, Louisiana. Mr. Silva explained that his route to work requires him to travel through the French Quarter on Decatur Street. On the day of the accident, Mr. Silva testified that he was traveling about twenty-five miles per hour on Decatur Street, a one-way street. Mr. Silva recounted that, as he passed the intersection of Ursuline and Decatur Streets, he heard something hit his car that sounded like a "thump." Mr. Silva explained that Ursuline Street is also a one-way street that intersects Decatur Street, and traffic on Ursuline Street travels from the right across Decatur Street. Mr. Silva testified that he heard this "thump" as he passed the light pole "with the one-way sign on it" that sits on the corner of Ursuline and Decatur Streets. He explained that, when he looked out his rearview mirror, he observed Ms. Duran on the ground "approximately five feet in front of that pole, give or take," closer to the corner of the intersection. He testified that he stopped the van, parked, and got out to check on Ms. Duran. Mr. Silva testified that, prior to the collision, he did not see Ms. Duran as she was not traveling on Decatur Street as he approached the intersection of Ursuline Street, nor was she traveling ahead of him on Decatur Street at any time prior to the accident.

### Officer Harrelson's Testimony

Officer Harrelson investigated the accident. Officer Harrelson testified that he spoke to Ms. Duran and Mr. Silva at the accident scene, but was unable to observe Ms. Duran's bicycle as it had been removed from the accident scene prior to his arrival. He testified that he was wearing a body camera that captured footage

3

of his investigation at the accident scene. Officer Harrelson recounted the statement Ms. Duran provided at the accident scene. He testified that Ms. Duran told him she was riding on Ursuline Street and turned left onto Decatur Street. He testified that Ms. Duran admitted she was riding the wrong way on Ursuline Street. Officer Harrelson testified that he did not know for how long Ms. Duran was traveling on Decatur Street prior to the accident or the exact location of the accident. However, Officer Harrelson testified that he asked a paramedic where he believed the accident happened, and the paramedic pointed, "through the walls of the ambulance," to the general area where the crash happened, which was the intersection of Ursuline and Decatur Streets.

Officer Harrelson also spoke with Mr. Silva at the accident scene. Mr. Silva told Officer Harrelson he was traveling down Decatur Street when he heard something hit his car. Officer Harrelson testified that he observed a black mark going down the side of Mr. Silva's van. He further testified that, even though he was unable to observe Ms. Duran's bicycle, the evidence suggested that the black mark was caused by Ms. Duran's handlebar based on his observation of the black mark and the statements provided to him by Mr. Silva and Ms. Duran.

Officer Harrelson further testified that traffic traveling on Decatur Street has the right-of-way at the intersection of Ursuline and Decatur Streets. Officer Harrelson also explained that a building is located at the intersection of Ursuline and Decatur Streets that would make it difficult for someone traveling on Decatur Street to see a bicyclist traveling the wrong way down Ursuline Street. Based on his investigation, Officer Harrelson concluded the accident occurred at the intersection of Ursuline and Decatur Streets and that Ms. Duran was riding her bicycle the wrong way on Ursuline Street. Therefore, Officer Harrelson determined

4

that the accident was Ms. Duran's fault. Officer Harrelson described the accident as a "sideswipe" accident and cited Ms. Duran for traveling on the wrong side of the road on a one-way street, a violation of La. R.S. 32:194.[1]

### *Mr. Poplin's Testimony*

Mr. Poplin, Ms. Duran's expert accident reconstructionist, testified by deposition that the accident could not have occurred at the intersection of Ursuline and Decatur Streets. Mr. Poplin explained that his opinion of the accident was based upon his review of the following: photographs of the accident scene; photographs of Mr. Silva's van; a photograph of Ms. Duran's bicycle; Officer Harrison's body camera footage; depositions of Ms. Duran, Mr. Silva, and Officer Harrelson; Google Earth satellite images of the accident scene; and Officer Harrelson's crash report.

Mr. Poplin testified that the physical evidence, including the black mark on Mr. Silva's car, revealed that Ms. Duran was traveling on Decatur Street, rather than turning onto Decatur Street from Ursuline Street when the accident occurred. Mr. Poplin explained that "in a sideswipe-type collision" the right handlebar is "pushed forward," causing the front wheel of the bicycle to rotate to the left, which, in turn, would "pitch the bicycle" or cause it to rotate in a downward direction to the right based on the momentum of the rider. As such, Mr. Poplin opined that the "downward mark" found on Mr. Silva's van indicated that Ms.

---

[1] La. R.S. 32:194 provides:

> Every person riding a bicycle upon a highway of this state shall be granted all of the rights and shall be subject to all the duties applicable to the driver of a vehicle by this Chapter, except as to special regulations in this Part, including special regulations applying to peace officers utilizing bicycles in furtherance of their official duties, and except as to those provisions of this Chapter which by their very nature can have no application.

Duran's turn was complete and the two vehicles made parallel contact. Mr. Poplin conclusively found this accident to be a "sideswipe/rear-end collision." Thus, he opined that Mr. Silva should have had an opportunity to see Ms. Duran, prior to the collision, if he was looking forward and was alert while driving.

In addition to the testimony presented at trial, screenshots from Officer Harrelson's body camera footage of the accident scene, photographs of Mr. Silva's van, and a photograph of Ms. Duran's bicycle were introduced into evidence. The video from Officer Harrelson's body camera was also introduced by Appellees which captured Officer Harrelson's investigation of the accident scene.

At the close of the trial, the trial court took the matter under advisement to review Mr. Poplin's deposition. On May 1, 2019, the trial court rendered judgment in favor of Appellees and dismissed Ms. Duran's lawsuit with prejudice. Ms. Duran timely appeals.

## STANDARD OF REVIEW

"Appellate courts review findings of fact made by the trial court judge using the manifestly erroneous or clearly wrong standard of review." *Keller v. Monteleon Hotel*, 2009-1327, p. 2 (La. App. 4 Cir. 6/23/10), 43 So.3d 1041, 1043 (citing *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989)). "[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Id.* (internal citation omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Id.*

In order for an appellate court to reverse a trial court's finding of fact, an appellate court is required "to find that the findings are not supported by a

6

reasonable factual basis and that the record demonstrates that the findings are clearly wrong." *Id.* (citing *Stobart v. State through Dep't of Transp. and Dev.*, 617 So.2d 880, 882 (La. 1993)). Ultimately, the appellate court must determine whether the "factfinder's conclusion was a reasonable one." *Id.*, 2009-1327, p. 2, 43 So.3d at 1042-43.

## DISCUSSION

On appeal, Ms. Duran raises the following six assignments of error: (1) the trial court erred in assessing 100% of fault to her for the accident; (2) the trial court erred in determining the accident occurred at the intersection of Ursuline Street and Decatur Street; (3) the trial court erred in finding Mr. Silva was not liable for the accident; (4) the trial court erred in failing to consider the weight of the physical evidence demonstrating that Ms. Duran was "sideswiped" by Mr. Silva; (5) the trial court erred in failing to consider the expert testimony of Mr. Poplin; and (6) the trial court erred in failing to award Ms. Duran damages.

For discussion purposes, we have consolidated these assignments of error into three issues. The issues are as follows: (1) whether the trial court erred in finding Ms. Duran solely at fault for the accident; (2) whether the trial court properly considered the testimony of Ms. Duran's expert accident reconstructionist, Mr. Poplin; and (3) whether the trial court erred in failing to award Ms. Duran damages.

*Allocation of Fault*

Ms. Duran argues the trial court erred in finding her solely at fault for the accident. To support her argument, Ms. Duran contends the trial court erred in determining the accident occurred at the intersection of Ursuline and Decatur Streets, finding Mr. Silva was not at fault, and failing to consider the weight of the

7

evidence presented at trial, which she asserts demonstrates that she was "sideswiped" by Mr. Silva's van.

"Allocations of fault are factual determinations, which are not to be disturbed by appellate courts in absence of manifest error or unless a particular finding of fact was "'clearly wrong.'" *Antippas v. Nola Hotel Group, LLC*, 2017-0798, p. 4 (La. App. 4 Cir. 2/27/19), 265 So.3d 1212, 1216 (citing *Aetna Life and Casualty Company v. Solloway*, 25,462 (La. App. 2 Cir. 1/19/94), 630 So.2d 1352, 1356). "Allocation of fault is not an exact science, or the search for one precise ratio, but rather an acceptable range. Allocations of fault within such a range cannot be clearly wrong." *Id.* (citing *Foley v. Entergy Louisiana, Inc.*, 2006-0983, p. 32 (La. 11/29/06), 946 So.2d 144, 166).

Here, the trial court heard live testimony from Ms. Duran, Mr. Silva, and Officer Harrelson, the investigating officer, regarding the events surrounding the accident. Ms. Duran testified that she was traveling the wrong way on Ursuline Street before yielding to make a left turn onto Decatur Street. She testified that she was traveling on the left side of the street for approximately "five or six seconds" before she was "sideswiped" by Mr. Silva's van. Ms. Duran admitted that she did not see Mr. Silva as she turned onto Decatur Street.

Mr. Silva testified that he was traveling about twenty-five miles per hour down Decatur Street. He stated that, as he passed through the intersection of Ursuline and Decatur Streets, he heard a "thump" when Ms. Duran hit his van. He testified that he heard this noise at the corner of Ursuline and Decatur Streets before the one-way sign and the light pole that sits on the corner of Ursuline and Decatur Streets. Mr. Silva testified that he did not see Ms. Duran at any time prior to the accident.

8

Officer Harrelson testified the accident occurred at the intersection of Ursuline and Decatur Streets based on the location of the ambulance, explaining that an ambulance generally parks near where a victim is found. Officer Harrelson also testified that he determined the accident occurred at the intersection of Ursuline and Decatur Streets based upon his interviews of Mr. Silva and Ms. Duran at the accident scene. Officer Harrelson testified that a motorist traveling down Decatur Street would have an obstructed view of a bicyclist that was traveling the wrong way on Ursuline Street because of a building located at the intersection of Ursuline and Decatur Streets that protrudes into the intersection. He testified that, after speaking with both Mr. Silva and Ms. Duran, he concluded the accident was Ms. Duran's fault because she was traveling the wrong way on a one-way street, on the wrong side of the road before crossing the intersection and hitting Mr. Silva. Accordingly, he cited Ms. Duran for violation of La. R.S. 32:194. He testified that Mr. Silva had the right-of-way on Decatur Street.

In Louisiana, it is well-settled that bicyclists have a statutory duty to comply with traffic laws applicable to drivers of motor vehicles. La. R.S. 32:194. "Bicyclists are also subject to the same duties applicable to drivers of motor vehicles, including the duty to keep a proper lookout at all times." *Antippas*, 2017-0798, p. 4, 265 So.3d at 1217 (citing La. R.S. 32:194). Moreover, "[e]very person operating a bicycle upon a roadway shall ride as near to the right side of the roadway as practicable, exercising due care when passing a standing vehicle or one proceeding in the same direction..." La. R.S. 32:197(A). Additionally, "[w]hen two vehicles approach or enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left, shall yield the right of way to the vehicle on the right." La. R.S. 32:121(A).

9

Ms. Duran's testimony established four critical facts: (1) she admitted that she was traveling the wrong way down Ursuline Street; (2) she failed to keep a proper lookout as she turned left onto Decatur Street, as she admitted that she did not see Mr. Silva; (3) she failed to properly yield before turning onto Decatur Street; and (4) she was traveling on the wrong side of Decatur Street, in violation of La. R.S. 32:197(A). Ms. Duran argues that her expert, Mr. Poplin, opined that Ms. Duran was "sideswiped" or "rear-ended" based on the physical evidence he reviewed in this matter. However, Mr. Poplin's testimony conflicts with Mr. Silva's testimony, Officer Harrelson's testimony, and the physical evidence presented at trial. The screenshots from Officer Harrelson's body camera footage showed the accident occurred at the intersection of Ursuline and Decatur Streets. Mr. Silva's and Officer Harrelson's testimony corroborated that the accident occurred at the intersection of Ursuline and Decatur Streets.

Further, the trial court determined that Mr. Silva's account of the accident was "more credible." In making this determination, the trial court found that Ms. Duran provided inconsistent accounts of the accident to her medical providers. "The trial court's credibility determinations must be given great deference because only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief of what is said." *Frost v. Carter*, 2013-0375, pp. 12-13 (La. App. 4 Cir. 4/2/14), 140 So.3d 59, 67 (citing *Billiot v. Billiot*, 2001-1298, pp. 5-6 (La. 1/25/02), 805 So.2d 1170, 1174).

Ms. Duran and Mr. Silva gave conflicting accounts of the accident. As such, the trial court had to make credibility determinations regarding their testimony. At trial, Ms. Duran testified that she was established on Decatur Street when she was "sideswiped" by Mr. Silva's van, which hit her handlebar and caused her to fall

10

over to the ground. The record reflects that Mr. Silva gave a statement to Officer Harrelson that he was traveling down Decatur Street when he heard something hit his car and that he did not see Ms. Duran. Mr. Silva's trial testimony was consistent with the statement he provided to Officer Harrelson. However, contrary to Ms. Duran's trial testimony that Mr. Silva's van hit her shoulder and handlebar on her bicycle, the record reflects that Ms. Duran told her medical providers that she hit her head on Mr. Silva's rearview mirrors. At trial, Ms. Duran admitted that she told her medical providers inconsistent statements about where her body made contact with Mr. Silva's van. As such, the record reflects that Mr. Silva's account of the accident was consistent and was corroborated by Officer Harrelson's testimony.

Furthermore, the physical evidence presented at trial does not definitively prove Mr. Silva's fault, as Ms. Duran argues. In particular, the photograph of the black mark on Mr. Silva's van, which Ms. Duran argues proves she was "sideswiped," was not sufficient evidence to negate Ms. Duran's fault for the accident. The record reflects there was no evidence presented to definitively attribute the black mark on the side of Mr. Silva's van to the collision. Officer Harrelson testified that the black mark he observed on the side of Mr. Silva's van suggests that it was from Ms. Duran's handlebars. However, he admitted that he did not observe Ms. Duran's bicycle at the accident scene, therefore, he could not affirmatively attribute the black mark on Mr. Silva's van to be a result of striking Ms. Duran on her bicycle.

Moreover, Mr. Poplin could not confirm the black mark or the scratches on Ms. Duran's bicycle was a result of the accident, as he admitted he did not inspect Ms. Duran's bicycle at the time of the accident. Additionally, the damage to Ms.

Duran's bicycle was not in his report because the photograph of her bicycle was not provided to him until after his report was prepared.

We find that the trial court's finding of fault is supported by the record and is not "clearly wrong." *Antippas*, 2017-0798, p. 4, 265 So.3d at 1216. Thus, we conclude that the trial court was not manifestly erroneous in finding Ms. Duran solely at fault for the accident.

### *Mr. Poplin's Expert Testimony*

Next, Ms. Duran argues the trial court erred in failing to consider the testimony of her expert accident reconstructionist, Mr. Poplin, which Ms. Duran contends demonstrates that Mr. Silva was liable for the accident and should have had a percentage of fault allocated to him by the trial court.

"The great discretion and deference granted to the fact-finder on appellate review extends to its assessment of expert testimony." *McKenzie v. Cuccia*, 2004-0112, p. 6 (La. App. 4 Cir. 6/23/04), 879 So.2d 335, 339 (citing *Sistler v. Liberty Mutual Ins. Co.,* 558 So.2d 1106 (La. 1990)). "The weight given expert testimony is dependent upon the expert's professional qualifications and experience, and the facts upon which the opinion is based." *Tuft v. Tuft*, 51,293 (La. App. 2 Cir. 1/18/17) (*unpub.*), 2017 WL 4341309, *6. "After weighing and evaluating expert and lay testimony, the trial court may accept or reject the opinion expressed by any expert." *Id.*

In the case *sub judice*, the record reflects the trial court did consider Mr. Poplin's testimony and took the matter under advisement, at the conclusion of trial, to review Mr. Poplin's deposition. Ultimately, the trial court determined that Mr. Poplin made "assumptions" regarding where the accident occurred, and that this

testimony directly conflicted with the documentary evidence presented at trial. We agree.

Mr. Poplin opined this accident was a "sideswipe collision, a rear end—from the rear." He testified the physical evidence exhibiting the black mark on Mr. Silva's van revealed that Ms. Duran was traveling parallel to Decatur Street as opposed to turning onto Decatur Street when then the collision occurred. Mr. Poplin explained that, if Ms. Duran was in the "midst of a turn" at the time of the collision, the bicycle's front wheel would have made contact with Mr. Silva's van, which would have created a lower mark on the van. However, due to the placement of black mark on Mr. Silva's van and the damage on Ms. Duran's right handlebar of her bicycle, he opined that the turn was complete and the two vehicles made contact parallel to one another.

Contrary to Ms. Duran's contention that Mr. Poplin's testimony was not properly considered by the trial court, the record reflects the trial court did not err in concluding Mr. Poplin's testimony was based on "assumptions." In his deposition, Mr. Poplin admitted that he did not go to the accident scene, talk to either Ms. Duran or Mr. Silva, or personally inspect Ms. Duran's bicycle. Furthermore, he stated that his opinion was based upon his review of satellite images of the area from Google Earth, photographs of the accident scene and the vehicles, and review of the depositions of Mr. Silva and Ms. Duran.

Notably, Officer Harrelson, who was at the scene, saw Mr. Silva's van, and interviewed both Ms. Duran and Mr. Silva, concluded that the accident was a "sideswipe" accident, and that the accident was Ms. Duran's fault. Thus, we do not find the trial court abused its discretion in determining that Mr. Poplin made

13

"assumptions" regarding where and how the accident occurred. Accordingly, we find this assignment of error lacks merit.

*Damages*

Lastly, Ms. Duran argues that the trial court erred in failing to award her damages. Louisiana jurisprudence establishes that the trial court must determine fault prior to making an award for damages. *See Watson v. State Farm Fire & Casualty Insurance Co.*, 469 So.2d 967 (La. 1985); *Spears v. City of Scott*, 2005-230 (La. App. 3 Cir. 11/2/05), 915 So.2d 983, *writ denied*, 2005-2478 (La. 3/31/06), 925 So.2d 1259. The trial court evaluated the physical evidence and testimony presented at trial and determined that Ms. Duran violated Louisiana statutory traffic regulations. Accordingly, the trial court found Ms. Duran solely liable for the accident. Ms. Duran is therefore not entitled to a damage award because no fault was allocated to Mr. Silva. We find this assignment of error lacks merit.

## DECREE

For the following reasons, we affirm the trial court's May 1, 2019 judgment dismissing Ms. Duran's lawsuit with prejudice.

**AFFIRMED**