MARION F. EDWARDS, Judge.
 

 12Pefendant/appellant, Gregory L. Hartshorn (a/k/a Roy Desilva) (“Harts-horn”), was charged in a bill of information by the Jefferson Parish District Attorney with carjacking in violation of La. R.S. 14:64.2. The State alleged that, on February 28, 2007, Hartshorn intentionally took
 
 *175
 
 a motor vehicle that belonged to John Romano (“Mr.Romano”) without Mr. Romano’s consent. The vehicle was in Mr. Romano’s lawful possession, and Harts-horn used force and/or intimidation to take the vehicle.
 

 Hartshorn pled not guilty at arraignment. However, he later withdrew the not guilty plea and entered a plea of guilty as charged. Hartshorn was sentenced to ten years of imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence.
 

 The State filed a multiple offender bill of information, charging that Hartshorn was a second felony offender. Hartshorn admitted the allegations of the |smultiple bill. The trial court vacated his original sentence and sentenced him as a second felony offender to ten years of imprisonment at hard labor, without the benefit of parole, probation, or suspension of sentence.
 

 The trial court granted Hartshorn an out-of-time appeal, which is now before us for consideration.
 

 Appointed appellate counsel filed a brief asserting that he has thoroughly reviewed the trial court record and cannot find any non-frivolous issues to raise on appeal. Counsel has also filed a motion to withdraw as counsel of record. This brief is in accordance with
 
 Anders v. California.
 

 [1]
 

 In
 
 Anders,
 
 the United States Supreme Court stated that appointed appellate counsel may request permission to withdraw if he finds his case to be wholly frivolous after a conscientious examination of it. The request must be accompanied by a brief referring to anything in the record that might arguably support the appeal so as to provide the reviewing court with a basis for determining whether appointed counsel have fully performed their duty to support their clients’ appeals to the best of their ability and to assist the reviewing court in making the critical determination whether the appeal is indeed so frivolous that counsel should be permitted to withdraw.
 
 [2]
 

 The Louisiana Supreme Court stated that an
 
 Anders
 
 brief need not tediously catalog every meritless pretrial motion or objection made at trial with a detailed explanation of why the motions or objections lack merit. However, an
 
 Anders
 
 brief must demonstrate by full discussion and analysis that appellate counsel has cast an advocate’s eye over the trial record and considered whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a |4significant, adverse impact on shaping the evidence presented to the jury for its consideration.
 
 [3]
 

 When conducting a review for compliance with
 
 Anders,
 
 an appellate court must conduct an independent review of the record to determine whether the appeal is wholly frivolous.
 
 [4]
 
 If, after an independent review, the reviewing court determines there are no non-frivolous issues for appeal, it may grant counsel’s motion to withdraw and affirm the defendant’s conviction and sentence. However, if the court finds any legal point arguable on the merits it may either deny the motion and order the court-appointed attorney to file a brief arguing the legal point(s) identified by the
 
 *176
 
 court, or grant the motion and appoint substitute appellate counsel.
 
 [5]
 

 Appellate counsel filed a prior brief in this matter asserting that he could not find any non-frivolous issues to raise on appeal. However, this Court found the brief that was submitted was not in conformance with the procedures outlined in
 
 Anders
 
 and Jyles.
 
 [6]
 
 Accordingly, by Order of this Court rendered on April 22, 2009, counsel’s request to withdraw as counsel was denied, and he was ordered to submit a brief in compliance with
 
 Anders
 
 and
 
 Jyles.
 
 By that Order, we required counsel to include a discussion of the validity of Hartshorn’s guilty plea, his admission to being a second felony offender, and a discussion of the issues raised in his
 
 pro se
 
 briefs. This Court also ordered that, if after examination of the record, counsel concluded there were non-frivolous issues on which to base his appeal, he was to file a brief specifying the alleged errors.
 

 In the second brief, appellate counsel asserts that, after a detailed review of the record, he still finds no non-frivolous issue upon which to base an appeal. He |Balso notes that there were no hearings or rulings on any motions or objections by trial counsel. He asserts that the facts were straightforward and sufficient. He points out that the ten-year sentence Hartshorn received was in line with the plea agreement and was the mandatory minimum sentence for a second felony offender. Finally, counsel concludes that the sentence did not seem excessive under the circumstances.
 

 Appellate counsel does note that the trial court failed to advise Hartshorn of the mandatory minimum two-year sentence at hard labor he faced for the carjacking offense but believed the error to be frivolous. He contends that Hartshorn was told the maximum sentence he faced and that he would be sentenced to ten years without benefits pursuant to the multiple bill. Counsel concludes it would be unreasonable to believe that, had Hartshorn been told the minimum sentence he could receive for the crime charged, that such information would have influenced his plea bargain decision.
 

 Appellate counsel also noted that, when Hartshorn pled guilty, he was advised of his right to a jury trial, his right to confront his accusers, and his privilege against self-incrimination. He concludes that Hartshorn’s guilty plea and admission to being a habitual offender were valid and without error. However, he recognizes that a line on the multiple offender plea form regarding being forced, coerced, or threatened to enter a guilty plea was not initialed, but he discounts this by noting that, if this is an error, it is harmless, because in the plea colloquy Hartshorn was asked in open court if anyone used force, intimidation, coercion, or promise of reward to force the guilty plea, and he responded negatively.
 

 Further, appellate counsel notes that the bill of information appears to be in order, that the minutes indicate Hartshorn was present for all the court proceedings, | fiand that he had the presence of an attorney at every step of the proceedings. Finally, he requests an error patent review.
 

 In a May 11, 2009 letter, the State informed this Court that, after reviewing the record, including the original and supplemental briefs filed by counsel and the original and supplemental
 
 pro se
 
 briefs filed by Hartshorn, it did not intend to file a response brief.
 

 
 *177
 
 We have conducted a through review of the record and find that appellate counsel’s representations are correct. Further, we note that Hartshorn pled guilty as charged to carjacking and then admitted to being a second felony offender as alleged in the multiple bill. When a defendant pleads guilty, he normally waives all non-jurisdietional defects in the proceedings leading up to the guilty plea, and precludes review of such defects either by appeal or post-conviction relief.
 
 [7]
 
 Additionally, an unconditional plea, willingly and knowingly made, waives any and all non-jurisdictional defects and bars a defendant from later asserting on appeal that the State failed to produce sufficient proof at the multiple offender hearing.
 
 [8]
 

 Because we find that appellate counsel has fully complied with the order of this Court, and for other reasons that follow, we hereby grant the motion to withdraw as counsel.
 

 PRO SE BRIEF ASSIGNMENTS OF ERROR
 

 Hartshorn has filed three pro
 
 se
 
 briefs in this matter. However, the third brief is untimely in accordance with Uniform Rules, Courts of Appeal, Rule 2-13. Therefore, this opinion will only address the errors assigned in the first two briefs.
 

 |7In both briefs, Hartshorn asserts that he was denied due process because his guilty plea was not voluntary or knowing. He states that he did not know the nature of the charges against him or the consequences of the guilty pleas.
 

 Hartshorn also challenges his sentence, arguing that the trial court imposed an illegal sentence on both the initial charge and the enhanced multiple bill.
 

 In his final assignment, Hartshorn requests a review of the record for errors patent.
 

 VALIDITY OF GUILTY PLEA
 

 In his argument regarding the validity of the guilty plea, Hartshorn’s allegations include that he was not informed of the mandatory minimum sentence in the carjacking charge, that the court failed to allow him to plead to the multiple bill allegations, and that he did not have an understanding of the consequences of his guilty sentence. He also argues the State was not forced to prove the allegations of the multiple offender bill of information. We find no merit in these arguments for the following reasons:
 

 Once a defendant is sentenced, only those guilty pleas which are constitutionally infirm may be withdrawn by appeal or post-conviction relief.
 
 [9]
 
 In Hartshorn’s second supplemental
 
 pro se
 
 brief, he does request that he be allowed to withdraw his guilty plea and invoke his right to a jury trial.
 

 A guilty plea is constitutionally infirm if it is not entered freely and voluntarily, if the Boykin
 
 [10]
 
 colloquy is inadequate, or when a defendant is induced to enter the plea by a plea bargain or what he justifiably believes was a plea bargain and that bargain is not kept.
 
 [11]
 

 | /f he record shows that Hartshorn was advised of his right to a jury trial, his right
 
 *178
 
 of confrontation, and his privilege against self-incrimination. Hartshorn acknowledged that his counsel had advised him of these rights, and he indicated that he understood these rights.
 
 [12]
 
 The trial judge explained that he wanted Hartshorn to convince him that Hartshorn understood what he was doing by pleading guilty and, therefore, would explain the nature of the crime to which he was pleading, as well as the consequences of the guilty plea. The trial judge told Hartshorn to speak up if he had any questions or did not understand something. The trial judge stated he would answer any questions Hartshorn may have. The judge ascertained that Hartshorn was thirty-seven years old and had a tenth-grade education.
 

 The judge then advised Hartshorn that he was pleading guilty to a carjacking, which occurred on February 28, 2007. Hartshorn indicated that he understood the guilty plea was his decision and that no one could force him to plead guilty. He denied that anyone used any force, intimidation, coercion, or promise of reward against him or a member of his family to force him to plead guilty.
 

 The judge informed Hartshorn that, if his guilty plea was accepted, he would be sentenced to ten years at hard labor without benefit of parole, probation, or suspension of sentence. The judge then clarified that the maximum sentence that could be imposed was twenty years at hard labor and by law the sentence had to be served without benefit of parole, probation, or suspension of sentence. Hartshorn indicated that he understood this. The judge also informed Hartshorn that the State was filing a multiple bill, charging him as a second felony offender. The judge advised him of the penalty he faced as a second felony offender. The judge stated |9that the minimum would be ten years, and the maximum would be forty years of imprisonment. He advised as follows:
 

 I’m going to give you the same ten years. Okay. I’m going to technically have to say, “I vacate the sentence given on this one,” and then re-sentence you under the multiple bill, and I’m going to give you the same ten years. I’m not going to up it. I’m not going to change it to twenty or thirty or forty. I’m going to keep it at ten.
 

 Hartshorn indicated that he understood this.
 

 The trial judge then explained the
 
 Boy-kin
 
 rights to Hartshorn as required by law, and that he would be waiving rights by pleading guilty. Hartshorn acknowledged, after the discussion of each right, that he understood both the nature of the right and the fact that, by pleading guilty, he was waiving the right.
 

 Hartshorn indicated that he understood that, by pleading guilty, he was telling the court he did commit the crime for which he was pleading guilty. The State then provided a factual basis for the plea. Thereafter, defense counsel and Hartshorn both indicated that they read and signed the waiver of rights form. Hartshorn agreed that he initialed all of the paragraphs of the form. The trial judge accepted the guilty plea, stating the following:
 

 I am entirely satisfied the defendant was aware of the nature of the crime to which he has pled guilty, the defendant did, in fact, commit said crime, understands the consequences of said plea of guilty, has made a knowing, intelligent, free, and voluntary act of pleading guilty to the above mentioned crime. There is a factual basis for the acceptance of this plea. I, therefore, accept the defendant’s plea of guilty.
 

 
 *179
 
 The trial judge then sentenced Hartshorn to ten years of imprisonment at hard labor ■without benefit of parole, probation, or suspension of sentence.
 

 Thereafter, Hartshorn entered an admission to the allegations in the multiple offender bill of information. The State used the carjacking charge as the | munderlying conviction and a prior conviction for possession of hydrocodone in violation of La. R.S. 40:967(C).
 

 After a complete review of the record, we find the trial judge properly advised Hartshorn of his right to a habitual offender hearing and his right to remain silent.
 
 [13]
 
 Hartshorn stated he understood those rights and wished to waive them.
 

 The trial judge explained that, as a second felony offender, he faced a sentencing range of ten to forty years and that he would be sentenced to ten years. Harts-horn indicated that he understood this. The trial judge confirmed that Hartshorn and his counsel had gone over and signed the form and accepted the guilty plea as being knowingly, intelligently, freely, and voluntarily made. The judge found that Hartshorn was a second felony offender, vacated the previous sentence, and sentenced Hartshorn as a second felony offender to ten years at hard labor without benefit of parole, probation, or suspension of sentence.
 

 Because he stipulated to the allegations in the multiple bill, Hartshorn is barred from asserting on appeal that the State failed to produce sufficient proof at the multiple bill hearing. The record shows that Hartshorn was fully aware that he was entering a plea of guilty to a charge of carjacking. The facts were presented by the State and the elements of this crime are straightforward. We find no merit in this argument.
 

 The completed multiple bill waiver of rights form signed by Hartshorn contained the penalty range to which he was exposed and the sentence he would receive. The form reflects Hartshorn admitted to being a second felony offender and was advised of his rights to a hearing and to remain silent.
 

 |uIn this case, it is clear that the trial judge carefully explained all rights to Hartshorn and made certain that Harts-horn understood those rights and the consequences of a guilty plea before accepting both the plea on the carjacking charge and the plea on the multiple offender bill as being knowingly and voluntarily made.
 

 Further, the trial judge also explained Hartshorn’s right to an appeal if he chose to go to trial. Hartshorn agreed that he understood that, by pleading guilty, he could not assert allegations of defects.
 

 After consideration of the record in this matter, we find nothing to support Harts-horn’s argument that his plea in either the carjacking charge or the multiple offender charge was unknowing and/or non-voluntary.
 

 SENTENCE
 

 Hartshorn argues that the sentence imposed was not as agreed upon in the plea agreement. We disagree.
 

 Specifically, Hartshorn argues that he was not informed of the mandatory minimum sentence and that he was not in
 
 *180
 
 formed he was pleading to a “crime of violence” when he pled guilty to the carjacking charge. He also argues that he pled guilty with the understanding that he would receive a ten-year sentence, with eligibility for parole and good time credit. Hartshorn asserts that his counsel told him the double bill would expose him to greater punishment in the future if he committed another crime.
 

 Hartshorn is precluded from seeking review of his sentence imposed in conformity with a plea agreement.
 
 [14]
 
 This Court has consistently recognized that La. |12C.Cr.P. art. 881.2 A(2) precludes a defendant from seeking review of an enhanced sentence to which the defendant agreed.
 
 [15]
 

 There is nothing in the record to support Hartshorn’s allegations that he was promised parole eligibility and good time credit in his enhanced sentence.
 

 As previously discussed, the record is clear that Hartshorn was informed, and indicated he understood, that the sentencing range for a second felony offender on the multiple bill is ten to forty years. He was also informed that he would receive ten years. We note that Hartshorn was not specifically told that the ten-year sentence on the multiple offender charge would be served without benefit, and the trial judge did not specify that it would be at hard labor. However, Hartshorn was informed that the original sentence on the carjacking charge was to be served at hard labor without benefits. Further, when sentencing was imposed on the multiple offender plea, the trial judge informed Hartshorn that the enhanced sentence would be “the same ten years.”
 

 Although the trial judge did not specifically tell Hartshorn that the minimum sentence on the carjacking charge was two years, the prosecutor read the sentencing provisions aloud in court during the procedure in answer to specific questions Hartshorn had about the sentence and the plea agreement.
 

 The record does not show that Hartshorn was promised “good time” eligibility as part of his plea agreement or that the State has violated the terms of the plea agreement. The waiver of rights form, the commitment, and the guilty plea transcript show the trial judge instructed Hartshorn that, if he pled guilty to the carjacking charge, he would be sentenced to ten years of imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Hartshorn was told he would receive credit for time served. He indicated he understood and |13accepted those terms. Further, the trial court was not required to inform Hartshorn of minimum sentences relating to good time or parole as affected by the classification of the crime as a crime of violence.
 
 [16]
 

 Hartshorn does not cite to anything in the record that indicates “good time” eligibility was part of the plea agreement, nor is there any mention of “good time” in the guilty plea documents or the
 
 Boykin
 
 colloquy.
 

 In any case, it appears the promise of “good time” would not constitute a “lawful cause” under contract law, since the trial court did not possess the authority to authorize “good time” eligibility for Hartshorn.
 
 [17]
 
 The trial court, with certain
 
 *181
 
 exceptions, has no role in determining eligibility for diminution of sentence. The statute governing such credit is directed exclusively to the Department of Corrections.
 
 [18]
 

 To the extent that Hartshorn argues he counsel’s incorrect advice and inducements forced him to plead guilty and constituted ineffective assistance of counsel, we find that claim cannot be properly considered by this Court in the context of this appeal. Generally, a claim of ineffective assistance of counsel is most appropriately addressed through a post-conviction relief application, rather than on appeal, so as to afford the parties an adequate record for review.
 
 [19]
 

 Consequently, we find the sentence was imposed in accordance with the plea agreement. Accordingly, we find no merit in this argument.
 

 ERRORS PATENT REVIEW
 

 We have reviewed the record for errors patent and found none that require corrective action by the Court.
 

 | , ¿Accordingly, we affirm Hartshorn’s convictions and sentence. Further we grant defense counsel’s motion to withdraw as counsel.
 

 AFFIRMED; MOTION TO WITHDRAW GRANTED.
 

 [1]
 

 . 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).
 
 See also, State v. Jyles, 96-2669
 
 (La.12/12/97), 704 So.2d 241 (per curiam).
 

 [2]
 

 .
 
 McCoy v. Court of Appeals of Wis., Dist. 1,
 
 486 U.S. 429, 438-39, 108 S.Ct. 1895, 1902, 100 L.Ed.2d 440 (1988).
 

 [3]
 

 .
 
 State v. Jyles,
 
 96-2669 (La.12/12/97), 704 So.2d 241 (per curiam).
 

 [4]
 

 .
 
 State v. Bradford,
 
 95-929, 95-930 (La.App. 5 Cir. 6/25/96), 676 So.2d 1108, 1110.
 

 [5]
 

 .
 
 Id.
 

 [6]
 

 .
 
 State v. Jyles, supra.
 

 [7]
 

 .
 
 State v. Wingerter,
 
 05-697 (La.App. 5 Cir. 3/14/06), 926 So.2d 662, 664.
 

 [8]
 

 .
 
 State
 
 v.
 
 Schaefer,
 
 97-465 (La.App. 5 Cir. 11/25/97), 704 So.2d 300, 304.
 

 [9]
 

 .
 
 State v. McCoil,
 
 05-658 (La.App. 5 Cir. 2/27/06), 924 So.2d 1120, 1124.
 

 [10]
 

 .
 
 Boykin v. Alabama,
 
 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
 

 [11]
 

 .
 
 Id.
 

 [12]
 

 . The commitment also reflects Hartshorn was advised of his
 
 Boykin
 
 rights.
 

 [13]
 

 . La. R.S. 15:529.1(D)(1)(a) requires that the defendant be advised of the specific allegations contained in the habitual offender bill of information and his right to a formal hearing at which the State must prove its case. Implicit in this requirement is the additional requirement that the defendant be advised of his constitutional right to remain silent.
 
 State
 
 v.
 
 Johnson,
 
 432 So.2d 815, 817 (La.1983);
 
 State v. Bell,
 
 03-217 (La.App. 5 Cir. 5/28/03), 848 So.2d 87, 90.
 

 [14]
 

 .
 
 State v. Washington,
 
 05-211 (La.App. 5 Cir. 10/06/05), 916 So.2d 1171, 1173.
 

 [15]
 

 .
 
 State v. Moore,
 
 06-875 (La.App. 5 Cir. 4/11/07), 958 So.2d 36, 46.
 

 [16]
 

 .
 
 See,
 
 La. R.S. 15:574.4(B);
 
 State v. Roe,
 
 05-116 (La.App. 3 Cir. 6/01/05), 903 So.2d 1265,
 
 writ denied,
 
 05-1762 (La.2/10/06), 924 So.2d 163.
 

 [17]
 

 .
 
 State v. Mitchell,
 
 08-629 (La.App. 5 Cir. 1/13/09), 7 So.3d 744, 752
 

 [18]
 

 .
 
 Id.
 

 [19]
 

 .
 
 State v. Burbank,
 
 07-125 (La.App. 5 Cir. 10/30/07), 971 So.2d 1173, 1180,
 
 writ denied,
 
 07-2287 (La.4/25/08), 978 So.2d 364.