MICHAEL E. KIRBY, Judge.

STATEMENT OF CASE

Walter Solomon, was indicted for: (1) second degree murder; (2) distribution of heroin; (3) possession with intent to distribute cocaine; (4) possession with intent to distribute heroin; (5) possession with intent to distribute marijuana; and (6 & 7) two counts of distribution of cocaine.[1] Solomon pled not guilty at his arraignment and the trial court subsequently denied his motions to suppress the evidence and statement. Also, it denied his motion to sever offenses. Solomon sought review of that ruling with this Court, which denied his application stating that he would have an adequate remedy on appeal if convicted. State v. Solomon, unpub., 2010-1262 (La.App. 4 Cir. 10/1/10).
On his trial date Solomon appeared for trial but pled guilty as charged to counts two (2) through seven (7) pursuant to North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). He was sentenced to: (1) fifty years at hard labor for distribution of heroin; (2) fifteen years at hard labor for possession with intent to distribute cocaine; (3) fifteen years at hard labor for possession with intent to ^distribute heroin; (4) fifteen years at hard labor for possession with intent to distribute marijuana; and (5) fifteen years for distribution of cocaine.
On that same day, Solomon pled guilty to being a double offender for distribution of heroin and he waived any sentencing delays. The trial court vacated the prior sentence for the distribution of heroin charge, and the defendant was sentenced to serve fifty years at hard labor as multiple offender, which is to run concurrently with all other sentences.
Less than two weeks later the trial court denied Solomon’s motion to correct an illegal sentence.[2] Thereafter, this Court denied his writ application stating: “The guilty plea waiver of rights forms to the underlying offenses and the multiple bill show that the relator was informed and acknowledged that he would receive a 50-year sentence. The relator has offered no evidence or proof to the contrary, and therefore is not entitled to relief.” State v. Solomon, unpub., 2010-1568 (La.App. 4 Cir. 12/16/10).

*607
STATEMENT OF FACT

On the date set for his trial defendant appeared and pled guilty as charged to distribution of heroin, possession with intent to distribute cocaine, possession with intent to distribute heroin, possession with intent to distribute marijuana, and two counts of distribution of cocaine, pursuant to North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). He admitted to being a multiple offender. He was sentenced to serve fifty years at hard labor for distribution of heroin as a double offender, to run concurrently with all other sentences.
| ^During the plea hearing, the trial court asked Solomon a series of standard questions regarding his plea. Pertinent to appeal, the trial court asked whether the defendant understood the sentencing range of a guilty verdict for distribution of heroin.
THE COURT: Do you understand the sentencing range on distribution of heroin is—
STATE: Five to fifty.
THE COURT: Five to fifty. Do you understand that?
DEFENDANT: I had a problem understanding how the time arrangements was going because I was told that I was going to be doing under the 572.
THE COURT: Right now, the only thing I want to do is make sure you understand what the sentencing range is on each of those charges.
DEFENDANT: Oh, okay. Yes.
COUNSEL FOR DEFENDANT: It’s five to fifty years.
After the defendant pleaded guilty to the multiple bill, the trial court vacated its previous sentence for distribution of heroin and sentenced the defendant as a double offender. Again the trial court sought to confirm that defendant understood his sentence as a double offender.
THE COURT: The Court will sentence you as follows: The Court will vacate the previous sentence dealing with [distribution of heroin] and sentence you pursuant to 529.1 as being a double offender. The Court sentences you to 50 years in the Department of Corrections with credit for time served. This sentence is to run concurrent with any other sentences that you have. Do you understand your sentence?
DEFENDANT: Yes. It’s going to still be under 572, right?
THE COURT: Yes.
1 ¿ERRORS PATENT
A review of the record reveals no patent errors.

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1

In his sole assignment of error, the defendant argues that he is entitled to withdraw his guilty plea because he did not knowingly and intelligently enter it thereby making it invalid. Specifically, he contends that he pled guilty, under the mistaken belief that the sentence was eligible for “good time” reduction, as provided by La. R.S. 15:571.3(B)(l)(a). In fact, the sentence was not eligible for reduction due to his prior cocaine conviction. See La. R.S. 15:571.3(C)(1).[3] | ¡¡Defendant points *608 out that during his plea hearing, he sought to confirm his eligibility for “good time” reduction when he asked whether his sentence was going to be “under 572” (a reference to Act. No. 572 of the 2006 Legislative session, which enacted La. R.S. 15:571.3(B)(l)(a)), and the trial court responded in the affirmative.
The validity of any guilty plea depends on the circumstances of the ease. State v. Filer, 2000-0073 (La.6/30/00), 762 So.2d 1080, per curiam. In determining the validity of agreements not to prosecute or of plea agreements, Louisiana courts generally refer to rules of contract law, while recognizing at the same time that a criminal defendant’s constitutional right to fairness may be broader than his or her right under contract law. State v. Louis, 94-0761, p. 7 (La.11/30/94), 645 So.2d 1144, 1148. The initial step under contract law is to determine whether a contract was formed in the first place through offer and acceptance. The party demanding performance of a contract has the burden of proving its existence. Id. at p. 10, 645 So.2d at 1149. It must also be determined whether the contract had a lawful cause or object, as contemplated by La. C.C. art. 1966.[4] See, State v. Hines, 2007-313, p. 3 (La.App. 5 Cir. 11/27/07), 970 So.2d 707, 709.
 It is well settled that a guilty plea is constitutionally infirm when a defendant is induced to enter that plea by a plea bargain or by what he justifiably believes was a plea bargain and that bargain is not kept. State v. Dixon, 449 So.2d 463, 464 (La.1984). There are two alternative remedies a for a breach of a plea bargain: (1) specific performance of the agreement; or (2) nullification or withdrawal of the | nplea. State v. Roberts, 2007-493, p. 6 (La.App. 5 Cir. 11/27/07), 973 So.2d 791, 794.
The record in this case does not definitively show that the defendant was promised “good time” eligibility as part of his plea agreement. The waiver of rights form and the commitment showed that the trial court instructed defendant that if he pled guilty as a double offender to the charges against him, he would be sentenced to fifty years at hard labor. The defendant indicated that he understood and accepted those terms, and the judge sentenced defendant accordingly.
Defendant cites the guilty plea transcript as proof that he pled guilty with the understanding that he would have *609 “good time” eligibility. Although he appears to have referenced “[Act. No.] 572 [of the 2006 Legislative session]” twice during his plea hearing, the transcript alone presents no proof that he would not have pled guilty but for the promise of “good time” eligibility. Even assuming that the transcript did contain some evidence that Solomon entered his guilty plea under the misunderstanding that he would receive “good time” eligibility, that premise would not be a “lawful cause” (as contemplated by La. C.C. art. 1966), because the trial court did not have the authority to authorize “good time” eligibility for him in the first place. See, State v. Mitchell, 2008-0629, p. 12 (La.App. 5 Cir. 1/13/09), 7 So.3d 744, 752; State v. Hartshorn, 2009-0047, p. 13 (La.App. 5 Cir. 11/10/09), 25 So.3d 172, 180. Indeed, the trial court, with certain exceptions that are inapplicable, here has no role in determining eligibility for diminution of sentence. The statute governing such “good time” credit, La. R.S. 15:571.3, is directed exclusively to the Louisiana Department of Corrections. Mitchell, 2008-0629, p. 12, 7 So.3d at 752; Hartshorn, 2009-0047, p. 13, 25 So.3d at 181. Therefore, even if the guilty plea transcript contained some evidence of a promise of “good time” 17eligibility in return for his guilty plea, that promise would have been unlawful on its face.
Defendant cites State v. Temple, 2000-2183 (La.App. 4 Cir. 5/16/01), 789 So.2d 639, in support of his position that he be allowed to withdraw his guilty plea. His reliance on Temple, however, is misguided. Temple involved a defendant’s ability to obtain immediate release from prison upon the successful completion of a “boot camp” program. The record clearly established that Temple’s attorney incorrectly induced him to plead guilty to the charges against him, under the mistaken belief that by completing a “boot camp” program while incarcerated, his sentence would be lessened. The record further established that the trial court misunderstood the manner in which completion of a “boot camp” program would affect a sentence as well. As such, Temple is not binding precedent here as it involved an entirely different set of facts and law.
This assignment has no merit.

CONCLUSION

Accordingly, we affirm the defendant’s conviction and sentence.
AFFIRMED.

. On the trial date, the State nolle prosequied the charge second degree murder.

. In his motion to correct an illegal sentence, Solomon argued that he did not understand the consequences of his guilty pleas because he was led to believe by counsel that he would receive a sentence of fifteen years on all counts and not a sentence of fifty years on all counts.

. La. R.S. 15:571.3(B)(1)(a) provides, in pertinent part:
Unless otherwise prohibited, every inmate in the custody of the department who has been convicted of a felony, except an inmate convicted a second time of a crime of violence as defined by [La.] R.S. 14:2(B), and sentenced to imprisonment for a stated number of years or months, may earn, in lieu of incentive wages, a diminution of sentence by good behavior and performance of work or *608 self-improvement activities, or both, to be known as “good time”. Those inmates serving life sentences will be credited with good time earned which will be applied toward diminution of their sentences at such time as the life sentences might be commuted to a specific number of years. The secretary shall establish regulations for awarding and recording of good time and shall determine when good time has been earned toward diminution of sentence. The amount of diminution of sentence allowed under the provisions of this Section shall be at the rate of thirty-five days for every thirty days in actual custody served on the imposed sentence, including time spent in custody with good behavior prior to sentencing for the particular sentence imposed as authorized by the provisions of [Louisiana] Code of Criminal Procedure Article 880
La. R.S. 15:571.3(C)(1) provides:
C. Diminution of sentence shall not be allowed an inmate in the custody of the [Louisiana] Department of Public Safety and Corrections if any of the following apply: (1) The inmate has been sentenced as an habitual offender under the Habitual Offender Law as set forth in [La.] R.S. 15:529.1.

. La. C.C. art. 1966 provides:
An obligation cannot exist without a lawful cause.