STATE OF LOUISIANA           \*        NO. 2022-KA-0623

VERSUS                    \*

                               COURT OF APPEAL

DARRYL PUDERER          \*

                               FOURTH CIRCUIT

                        \*

                               STATE OF LOUISIANA

                 \* \* \* \* \* \* \*

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 496-717, SECTION "SECTION E"
Judge Rhonda Goode-Douglas,
\* \* \* \* \* \*
**Chief Judge Terri F. Love**
\* \* \* \* \* \*
(Court composed of Chief Judge Terri F. Love, Judge Joy Cossich Lobrano, Judge
Karen K. Herman)

**LOBRANO, J.,  DISSENTS AND ASSIGNS REASONS**

Justin Caine Harrell
1100 Poydras Street
Suite 2900
New Orleans, LA 70163


          COUNSEL FOR DEFENDANT/APPELLANT


Jason Rogers Williams
District Attorney, Orleans Parish
Brad Scott, Assistant District Attorney
Chief of Appeals
Thomas Frederick, Assistant District Attorney
619 S. White Street
New Orleans, LA 70119

        COUNSEL FOR STATE of LOUISIANA/APPELLEE

              **CONVICTIONS AND SENTENCE AFFIRMED**
                    **March 10, 2023**

**TFL**
**KKH**

This is an out-of-time criminal appeal. Defendant, Darryl Puderer, seeks to set aside his plea agreement wherein he pled guilty to two counts of forcible rape[1] and two counts of second-degree kidnapping and received a sentence of twenty years on each count, with the sentences to run concurrently. Defendant's convictions arise out of two separate incidents which occurred respectively on February 9, 2002, and October 18, 2008. Defendant has filed counseled and *pro se* counseled assignments of error.

As to Defendant's joint counseled and *pro se* assignments of error, we find that Orleans Parish Criminal District Court had jurisdiction over Defendant's 2008 forcible rape charge; Defendant failed to timely preserve his claim that the State did not timely institute prosecution of the 2002 second-degree kidnapping charge; and Defendant knowingly and voluntarily entered his guilty plea. As more fully

---

[1] La. R.S. 14:42.1, as amended by La. Acts 2015, No. 184, § 1, effective August 1, 2015, now classifies forcible rape as "second degree rape." *State v. Jones,* 2015-0123, p. 1 n. 2 (La. App. 4 Cir. 12/2/15), 182 So. 3d 251, 257.

2

discussed herein, Defendant's remaining *pro se* assignments of error lack merit. Accordingly, we affirm Defendant's convictions and sentence.

## STATEMENT OF CASE/PROCEDURAL BACKGROUND

On May 11, 2010, the State charged Defendant by bill of information with two counts of forcible rape and two counts of second-degree kidnapping. The charges arose out of two separate incidents and two victims. The State maintained that in both the February 9, 2002 incident (Counts 1 and 2) and the October 18, 2008 incident (Counts 3 and 4), Defendant kidnapped an intoxicated woman in or around the New Orleans French Quarter area, drove her to an isolated area, and raped her.

Defendant initially entered not guilty pleas on all counts. Defendant filed a motion to quash Count 4—the 2008 forcible rape charge—on the grounds that the Orleans Parish Criminal District Court lacked jurisdiction because the State could not conclusively prove that the rape occurred in Orleans Parish. The trial court denied the motion, and Defendant did not seek appellate review of the ruling.

The State filed notice of its intent to introduce evidence of another incident, which happened on November 15, 2007. In that incident, Defendant also allegedly lured an intoxicated woman into his car by offering her a ride home, drove her to an isolated area, and then raped her. The trial court found the evidence admissible, and thereafter, scheduled the matter for trial.

On August 7, 2012, Defendant appeared in court with counsel, withdrew his former pleas of not guilty, and entered pleas of guilty to two counts of forcible rape and two counts of second-degree kidnaping. Pursuant to the plea agreement, Defendant was sentenced to twenty years imprisonment at hard labor on each

2

count, with the sentences to be served concurrently. Defendant was *Boykinized* and also signed a "Felony-Sex Offender Waiver of Constitutional Rights Plea of Guilty Form."

On May 9, 2014, Defendant filed a timely counseled application for post-conviction relief, and thereafter, a *pro se* supplemental memorandum. The trial court denied the application, finding that: (1) Defendant's ineffective assistance of counsel claim lacked merit; (2) Defendant was procedurally barred from challenging the timeliness of the 2002 kidnapping charge; (3) Defendant entered his guilty pleas knowingly and voluntarily; (4) Defendant failed to prove that the trial court lacked jurisdiction over the 2008 rape charge; and (5) Defendant waived his right to direct appeal as a result of pleading guilty. Defendant sought supervisory review in this Court[2] and the Louisiana Supreme Court.[3] Both courts denied relief.

On or about February 25, 2020, Defendant filed a second post-conviction relief application. Defendant argued that he was entitled to an out-of-time appeal and re-urged that his trial counsel rendered ineffective assistance. The State countered that Defendant's ineffective assistance of counsel claim was procedurally barred as that claim had previously been heard and denied by the trial

_____

[2] *See State v. Puderer*, 2015-0468 (La. App. 4 Cir. 6/17/15), *writ denied*, 2015-1359 (La. 10/17/16), 202 So. 3d 978.

[3] *See State ex rel. Puderer v. State,* 2015-1359 (La. 10/17/16), 202 So. 3d 978, where the Supreme Court held that:

1. Trial counsel did not provide ineffective assistance;
2. Statute [La. C.Cr. P. art. 572(B)] that extended original six year limitation period [for forcible rape prosecutions] did not offend prohibition on ex post facto laws;
3. Defendant's guilty pleas were knowing and intelligent;
4. Defendant could not prove that State committed *Brady* violation; and
5. The trial court had jurisdiction over the [2008] rape count.

3

court. However, the State lodged no objection to Defendant's request for an out-of-time appeal, and the trial court granted Defendant's request. The trial court reasoned that "[a] review of the record shows that [Defendant], on multiple occasions, expressed to trial counsel his wishes and intent to pursue an [a]ppeal, however trial counsel did not respond nor move forward with filing a Notice of Intent on behalf of [the defendant]." Citing *Garza v. Idaho,* 586 U.S. ___, 139 S. Ct. 738, 742, 203 L. Ed. 2d 77 (2019), the trial court found that Defendant was prejudiced by his "trial counsel's failure to complete the ministerial task of filing notice of intent."

## STATEMENT OF FACTS

### *February 9, 2002 Incident*

On February 9, 2002, K.H.(1),[4] was visiting New Orleans from Tennessee. After drinking on Bourbon Street, she started a walk back to her hotel room in the 1700 block of Canal Street. During her walk, a white, heavyset male pulled up in a white pickup truck and asked if she would like a ride. K.H.(1) accepted the ride, thinking that the older man reminded her of her father's friends. The man drove up Canal Street in a lake-bound direction and turned on a side street. He then stopped the truck and physically forced her to have sex. After he attacked her, he drove around in the truck with her until she escaped out of the moving vehicle.

K.H.(1) reached her hotel and reported the crimes to a security guard at her hotel, who contacted the New Orleans Police Department ("NOPD"). K.H.(1) was transported to the hospital, where she was treated for injuries. A sexual assault kit was performed, which indicated the presence of seminal fluid.

---

[4] The victims of each incident had the initials "K.H." Accordingly, the victims will be referenced herein as "K.H.(1)" and "K.H.(2)."

*October 17, 2008 Incident*

K.H.(2) was a member of a wedding party that had visited Bourbon Street between 11:30 p.m. and midnight on October 17, 2008. She went to a nightclub where she consumed several drinks. Her next recollection was waking up in the passenger seat of a white pickup truck in a seemingly "poor" neighborhood. She saw an overweight male, either bald or with very short hair, exiting a residence. When the man entered the truck, K.H.(2) asked the man to return her downtown so that she could catch up with her friends. K.H.(2) did not recall willingly entering Defendant's vehicle. The man did not immediately return to the hotel as requested. Instead, he drove around and ultimately stopped on the side of an unknown road. He exited the truck and started to kiss her. When she told him that "I really don't want to do this," the man replied, "we really don't want to think about what may happen if you don't." K.H.(2) believed the man's statement was threat. The man forced her to perform oral sex upon him. He then masturbated and choked her until she passed out. After he returned her to the hotel, K.H.(2) saw the vehicle's license plate number, which she provided to NOPD. NOPD determined by the license plate number that Defendant was the owner of the vehicle. K.H.(2) identified Defendant as the perpetrator from a six-pack photo lineup.

After Defendant's 2008 arrest, DNA from the 2002 incident rape kit was entered into Combined DNA Index System (CODIS), and Defendant was identified as the perpetrator of the 2002 rape.

## JURISDICTION

Before we begin our review of the merits, we address whether this Court has jurisdiction to address the merits of Defendant's out-of-time appeal based on the

5

timeliness of Defendant's request for an out-of-time appeal in his second application for post-conviction relief. La. C.Cr.P. art. 930.8(A)(2) provides, in relevant part, the following:

> No application for post conviction relief, including applications which seek an out-of-time appeal shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922 unless . . . the claim asserted in the petition is based upon a final ruling of an appellate court establish a theretofore unknown interpretation of constitutional law and petitioner establishes that this interpretation is retroactively applicable to his case, and the petition is filed within one year of the finality of the such ruling.

Here, unquestionably, Defendant's request for an out-of-time appeal occurred outside of the two-year period in which his conviction had become final. However, La. C.Cr. P. art. 930.8 was amended in 2021 to specifically authorize the State to "affirmatively waive any objection to the timeless" of a post-conviction application, provided that the waiver is in writing and filed in the district court record.[5] Moreover, although La. C.Cr.P. art. 930.4 provides that claims for relief that have already been fully litigated shall not be considered, that article was also amended in 2021 to permit the State to waive any procedural objections to repetitive writ applications.[6] In the present matter, the State expressly stated on the record that it "did not object" to the trial court's grant of an out-of-time appeal. Accordingly, the State waived any objection to the timeliness or consideration of

_____

[5] La. C.Cr.P. art. 930.8 (D) provides the following;

> Notwithstanding any provision of this Title to the contrary, the state may affirmatively waive any objection to the timeliness under Paragraph A of this Article of the application for post conviction relief filed by the petitioner. Such waiver shall be express and in writing and filed by the state into the district court record.

[6] La. C.Cr.P. art. 930.4(G) states in regards to repetitive applications that "[n]otwithstanding any provision of this Title to the contrary, the state may affirmatively waive any procedural objection pursuant to this Article. Such waiver shall be express and in writing and filed by the state into the district court record."

6

Defendant's request for an out-of-time as established in La. C.Cr.P. art. 930.8(D) or La. C.Cr.P. art. 930.4(G). Therefore, we find that this Court has jurisdiction to address the merits of Defendant's out-of-time appeal.[7]

## DISCUSSION

We reiterate at the outset that Defendant entered a negotiated plea deal with the State wherein Defendant unconditionally pled guilty to the two counts of forcible rape and the two counts of second-degree kidnapping charged in his bill of information and agreed to a concurrent sentence of twenty years on each count. The guilty plea transcript reflects that the trial court advised Defendant of his constitutionally guaranteed right to trial by jury, right of confrontation, right to appeal, and right against compulsory self-incrimination as required by *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and *State ex rel. Jackson v. Henderson,* 260 La. 90, 255 So.2d 85 (1971). Had Defendant elected to proceed to trial, he faced a potential sentence of up to one hundred and sixty years in custody.[8]

---

[7] The trial court's reliance on *Garza* in granting the out-of-time appeal may have been misplaced in that there is no established jurisprudence that *Garza* announced a new rule of constitutional law to be applied retroactively that affords a defendant, on collateral review, the right to appeal a conviction pursuant to a negotiated plea bargain based on an ineffective assistance of counsel claim. *See Sanders v. United States*, No. 13-CR-3696 RB, 2020 WL 1929463, at * 2 (D. N.M. Apr. 21, 2020). However, having found that the State waived any objection to Defendant's request for an out-of-time appeal, the trial court's reliance on *Garza*, whether improper or not, is moot.

[8] La. R.S. 14:42.1(B) provided in 2002 and 2008 that "[w]hoever commits the crime of forcible rape shall be imprisoned at hard labor, without benefit of probation, parole, or suspension of sentence, for not less than five not more than forty years. At least two years of the sentence shall be without benefit of parole, probation, or suspension of sentence."

La. R.S. 14:44.1(C) provided in 2002 and 2008 that "[w]hoever commits the crime of second degree kidnapping shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence shall be without benefit of parole, probation, or suspension of sentence."

Although the State waived any objection to Defendant's request for an out-of-time appeal, the granting of Defendant's out-of-time appeal does not restore the right to appeal as though Defendant had proceeded to a trial on the merits. Rather, the granting of the out-of-time appeal "does no more than restore the status quo that existed before counsel's deficient performance forfeited the appeal, and it allows an appellate court to consider the appeal as that court otherwise would have done." *Garza v. Idaho,* 586 U.S. ___, 139 S. Ct. 738, 749 (2019). Accordingly, this Court's review shall be limited to any errors patent, jurisdictional defects, and whether Defendant's guilty plea was knowing and voluntary. *State v. Clues-Alexander,* 2021-00831, p. 6 (La. 5/13/22), 345 So. 3d 983, 987 (*per curiam*).[9]

### *Errors Patent*

No errors patent were discerned in the appellate record. We thus begin our appellate review of the assignments of error by first considering the errors raised jointly in Defendant's counseled and *pro se* assignments of error.

### *Counseled Error Number 1; Pro Se Error Number 1: Orleans Parish Criminal District Court Subject Matter Jurisdiction Over 2008 Forcible Rape Charge*

In this assigned error, Defendant argues that Orleans Parish Criminal District Court lacked jurisdiction over the 2008 forcible rape charge because K.H.(2), a non-Louisiana resident, could not identify the exact location where she was raped. This issue was initially addressed and denied by the trial court at the preliminary

---

[9] Defendant's counseled reply brief also cites *State v. Clues-Alexander*, 2021-0831, p. 6, 3 So.3d at 987, in acknowledging the scope of review, referencing the following:

> Appellate review is confined to the question of whether the plea was voluntarily and intelligently entered, or should have been permitted to be withdrawn as involuntarily and unknowingly made (in addition to any jurisdictional defects that appear on the face of the pleadings and proceedings).

hearing.  In accordance with La. C.Cr.P. art. 615,[10] the matter was again considered and denied by the trial court in response to Defendant's pre-trial motion to quash.

Thereafter, Defendant raised the identical issue in his 2014 application for post-conviction relief.  Referencing La. C.Cr.P. art. 611 and *State v. Hester,* 1999-426 (La. App. 5 Cir. 9/28/99), 746 So. 2d 95, the trial court found no merit to Defendant's claim, emphasizing that an act or element of the forcible rape occurred in Orleans Parish.  The trial court reasoned as follows:

> **Louisiana Code of Criminal Procedure, article 611,** provides that: "All trials shall take place in the parish where the offense has been committed unless the venue is changed. If acts constituting an offense or if the elements of an offense occurred in more than one place, in or out of the parish or State, the offense is deemed to have been committed in any parish in the state in which any such act or element occurred.["] Here, the evidence shows that the elements of threats and/or without the lawful consent were present from the outset of the kidnapping in New Orleans and relevant when the victim was later prevented from resisting the rape. Thus, the act or element of the forcible rape occurred in Orleans Parish. And that's *State v. Hester.* Thus, the Court did not err in finding it had subject matter jurisdiction over Count 4 of the bill of information. And, accordingly, this claim is without merit.

As previously noted, this Court denied Defendant's writ application, which included the challenge to Orleans Parish Criminal District Court's jurisdiction over the 2008 rape charge, finding that "the trial court did not abuse its discretion."[11] Moreover, the Supreme Court, in denying Defendant's writ application, also specifically held that the trial court had jurisdiction over the rape count; and in

---

[10] La. C.Cr.P. art. 615 provides the following:

> Improper venue shall be raised in advance of trial by motion to quash, and shall be tried by the judge alone.  Venue shall not be considered an essential element to be proven by the state at trial, rather it shall be a jurisdictional matter to be proven by the state by a preponderance of the evidence and decided by the court in advance of trial.

[11] *See State v. Puderer*, 2015-0468 (La. App. 4 Cir. 6/17/15), *writ denied*, 2015-1359 (La. 10/17/16) 202 So. 3d 978.

support of its ruling, attached the trial court's oral reasons for judgment.[12] *State ex rel. Puderer*, 2015-1359, p. 1, 202 So.3d at 979. Further, the Court stated that

---

[12] The totality of the trial court's reasons for judgment as outlined in the attachment encompassed the following:

THE COURT:

All right. This is for Mr. Puderer. It's the ruling on the post-conviction. And I believe on the last dated, you-all did do, like, oral argument on the record. And then the court recessed for the ruling this morning. If you-all will just make your appearances for me.

MR. HARRELL:
Good morning, Your Honor. Justin Harrell on behalf of Mr. Darryl Puderer, who is present in court.

MR. DALY:

Kyle Daly with the State. Good morning, Your Honor.

THE COURT:

Good morning. All right. So this might be a minute because we had several different issues that were filed in both—Mr. Puderer, he had filed a pro se. And then there was a counseled application as well as, and we kind of joined them both. But let me just kind of go through, in the beginning, a factual history of where we are.

In 2010, the State filed a bill of information charging Mr. Puderer with two counts of forcible rape and two counts of second-degree kidnapping. On August 7th, 2010, Mr. Puderer pled guilty to all of these charges, and he was sentenced on each count to 20 years in the department of corrections at hard labor. On September 5th, 2014, the defendant, through counsel, filed the present application for post-conviction relief. On September 9th, 2014, the defendant filed a pro se application for post-conviction relief. On October 14, 2014, the State filed its response to the counseled application, and on December 12th, the State filed its response to the pro se application.

Now, the main question here is whether or not the Court should, grant the defendant's application for post-conviction relief. In the defendant's first pro se and counseled argument, they both assert that the defendant was denied ineffective assistance of counsel as guaranteed by the. Sixth Amendment. Specifically, the defendant argues that he received ineffective assistance because—and there was eight issues that he raised, the first being that counsel failed to apply for supervisory writing of [the] Court's denial of the motion to quash; that the counsel failed to obtain suppression of the 2008 lineup; that counsel failed to obtain exclusion of prieur evidence; that counsel failed to file a motion to quash Count 3 of the bill of indictment or information; that counsel failed to raise an ulterior motive by the alleged victim of the 2008 case; sixth, that counsel failed to raise that the prosecution of one count had expired pursuant to Code of Criminal Procedure article 572; his seventh, was that counsel failed to raise an ex post facto clause in reference to the constitutionality of article 572, the DNA general exception—the general time limitation, exception, to the general

time limitation, excuse me; and Count 8, that counsel failed to reserve any issues for appeal pursuant to State v. Crosby.

Specifically, as to the ineffective assistance of counsel, the United States Supreme Court has held that the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having—that the trial cannot be relied on as having produced a just result.

In particularly, the defendant must show that his representation fell below an objective standard of reasonableness and that but for counsel's errors, the results of the trial would have been different. Further, it is unnecessary to address the issues of both the performance and prejudice to the defendant if the defendant makes an inadequate showing on one of those components.

In the defendant's first subclaim, he contends that counsel was ineffective for failing to apply for supervisory writs of the court's denial of the motion to quash, which was based on lack of jurisdiction and improper venue. Here, the defendant fails to show that but for counsel's errors, the end result would have been different.

In the second and third subclaim, the defendant argues that counsel failed to obtain suppression of the 2008 lineup and failed to obtain exclusion of the prieur evidence. However, the defendant fails to show that counsel's representation fell below an objective standard of reasonableness and that, but for counsel's errors, the end result would have been different. Further, the defendant fails to show that this Court made any error in the prior rulings.

In the defendant's fourth subclaim, he asserts that counsel failed to file a motion to quash Count 3 of the bill of information. Specifically, the defendant avers that the State had no evidence to prove that the kidnapping occurred in the parish of Orleans. However, a review of the record shows that the victim in Count 3 was alleged to have been taken from the French Quarters, which is located in Orleans Parish. Thus, the defendant has failed to show that counsel's representation fell below an objective standard of reasonableness and that but for counsel's errors, the end results would have been different.

In the fifth subclaim, the defendant said that counsel failed to raise an ulterior motive by the alleged victim of the 2008 case. However, since the defendant pled guilty to the 2008 charges, the defendant has waived his right to confront and cross-examine the witnesses who accused him of this crime. Thus, the defendant fails to identify any wrongdoing by counsel.

In his sixth subclaim, he contends that the defense counsel failed to raise the claim that the prosecution of Count 1 in the bill of information had expired pursuant to Louisiana Code of Criminal Procedure article 572. Conversely, as to this claim, the State argues that had the Court quashed Count 1, there's no substantial probability that the sentence would have been any different. Here the defendant fails to show that, but for counsel's errors, the end result would have been different.

And the defendant's seventh subclaim, he asserts that counsel failed to raise the ex post facto clause in reference to constitutionality of Criminal Code of Procedure, article 527, the DNA exception to the general time limitation. Here the defendant fails to show that the application of 572 to this case violates the and [sic] ex post facto principal. Thus, the defendant fails to show that counsel's

court" and ordered the district court to record a minute entry consistent with the

representation fell below an objective standard of reasonableness and that but for counsel's errors, the end result would have been different.

And, lastly, in the eighth subclaim, he contends that counsel failed, to preserve any plea issues for appeal pursuant to State v. Crosby. Since the Court finds no error in the pre-plea rulings, I find that the defendant cannot show that he was prejudiced as a result of counsel's failure to reserve his right to appeal in accordance with Crosby. Thus, the defendant fails to show that, but for counsel's errors, the end result would have been different. Accordingly, his ineffective assistance of counsel's claims are without merit.

In the defendant's second pro se argument, he contends that the State failed to timely institute prosecution of the 2002 kidnapping charge. Specifically, the defendant asserts that pursuant to article 572 of the Louisiana Code of Criminal Procedure, one, that the time limitation for bringing prosecution on Count 1 had passed. Here, since second-degree kidnapping is a felony, pursuant to article 572(A)(1), the State has six years from the date the offense has been committed to prosecute. Therefore, the State had six years, from February 9th, 2002, in which to prosecute, try, or punish the defendant.

In opposition, the State argues that article 930.4 of the Code of Criminal Procedure, Section B and it states that: "This Court shall deny a relief when the defendant alleges a claim of which he had knowledge and inexcusably failed to raise in the proceedings leading to the conviction." This Court finds that the defendant's claim should had been raised in the proceedings leading to the conviction, and defendant's reasons for failing to raise the claim prior to his application for post-conviction relief is inexcusable. Thus, this Court will not consider the merits of the claim pursuant to article 930.4(B) and (F). Therefore— and, furthermore, the defendant's guilty plea waived any statute of limitation defense. Accordingly, this claim is without merit.

In the defendant's third pro se argument, he contends that the application of the enacted acts 2003, No. 487, Section 2, which added paragraph B, to the Louisiana Code of Criminal Procedure, article 527, constitute ex post facto violation. Specifically, the defendant states that the application of 572(B) permitted his prosecution on the charge of forcible rape, Count 2, after the expiration of the six-year period of time limitation for that charge.

The Louisiana Supreme Court has held that prior to expiration of the statute of limitations effective at the time of alleged offense, the defendant has no substantial right in limitation. And application of longer limitations statute, which was enacted after the offense but during the original limitation period, does not offend the prohibition on the ex post facto laws. And that State v.Ferrie, F-E-R-R-I-E, here, the 2003 amendment to 572 was enacted after the defendant's offense but during the defendant's original limitation period. Thus, Acts 2003, No. 487, Section 2 does not offend the prohibition on ex post facto laws, and, accordingly, this claim is without merit.

In the defendant's fourth pro se argu—and counseled argument, they contend the defendant's guilty plea was not knowingly and intelligently made. Specifically, they aver that the defendant was coerced into taking the plea bargain by trial counsel, and that this Court failed to fully advise him of his constitutional rights he was waiving. Additionally, the defendant contends that the charge in count 4 calls into question the entirety of the defendant's plea.

*per curiam.*[13]  *Id.*, p. 2, 202 So.3d at 979.

---

A review of the record shows that on August 7, 2012, the defendant, his attorney, and this Court properly executed a waiver of his rights plea of guilty form that enumerated the defendant's rights and indicated the sentence he would receive in accordance with the plea bargain. Accordingly and additionally, during the guilty plea colloquy, the Court advised the defendant of his right to a jury trial, the right of confrontation, and the privilege against self-incrimination as required by Boykin.

The Court also explained to the defendant the offense with which he was charged and the sentencing range for those offenses. The defendant acknowledged that he understood those rights and was not acting under threat or coercion or duress, and he also indicated that he wished to waive his rights and enter the guilty pleas. The defendant was carefully informed of his rights and the consequences of his pleas. And his pleas were entered in to knowingly and voluntarily. Furthermore, there is nothing in the record to support the defendant's claim that he was misled, and there is no indication that the defendant's pleas were in any way coerced or improperly taken by this Court. Accordingly, this claim by the defendant is without merit.

In the fifth pro se argument, the defendant asserts that the State committed prosecutorial misconduct by withholding Brady information. According to Brady, the prosecutor may not suppress evidence which is favorable to the defendant and material to the issue of the defendant's guilt or innocence, and that's <u>Brady v. Maryland</u>. Favorable evidence includes both exculpatory evidence and impeachment evidence.

Furthermore, the evidence is material if there is a reasonable probability sufficient to undermine confidence in the outcome that the evidence, if disclosed to the defense, would have changed the outcome of the proceeding or created a reasonable doubt that did not otherwise exist. And that's <u>U.S. v. Bagley</u>. Here, the defendant's allegations are general and conclusory. The defendant fails to provide sufficient evidence to support a claim that the State suppressed any exculpatory and material information. Further, the defendant fails to show that the State engaged in any misconduct regarding the defendant's records request. Accordingly, this claim is without merit.

In his sixth pro se and counseled argument, the defendant claims that the Court lacked subject matter jurisdiction over Count 4 of the bill of information. Specifically, the defendant asserts that since the named victim in Count 4 could not identify the exact location where she was raped, the Court did not have jurisdiction over that count.

Louisiana Code of Criminal Procedure, article 611, provides that: "All trials shall take place in the parish where the offense has been committed unless the venue is changed. If acts constituting an offense or if the elements of an offense occurred in more than one place, in or out of the parish or State, the offense is deemed to have been committed in any parish in the state in which any such act or element occurred. Here, the evidence shows that the elements of threats and/or without the lawful consent were present from the outset of the kidnapping in New Orleans and relevant when the victim was later prevented from resisting the rape. Thus, the act or element of the forcible rape occurred in Orleans Parish. And that's <u>State v. Hester</u>. Thus, the Court did not err in finding it had subject matter jurisdiction

As set forth above, Defendant has fully litigated this claim, with our state courts having uniformly rejected Defendant's argument that Orleans Parish Criminal District Court lacked jurisdiction over the 2008 forcible rape charge. Nonetheless, Defendant argues that the discretionary nature of a court's review in collateral proceedings, such as post-conviction matters, still permits appellate review as this issue "has never been reviewed for legal error."

We disagree with Defendant's contention that this error has not been adequately reviewed for legal error. This Court finds that the Supreme Court's review of this issue in *State ex rel. Puderer*, *supra*, wherein the Court adopted and attached the trial court's reasons for judgment in determining that Orleans Criminal District Court Parish had jurisdiction provided adequate appellate review of this issue for legal error. Notwithstanding, although not required to do so, this Court shall exercise its discretion and review the merits of this error.

Similar to the Supreme Court in *State ex rel. Puderer*, this Court incorporates the reasoning provided by the trial court in determining that Orleans Parish Criminal District Court had jurisdiction over the 2008 forcible rape charge. We begin by noting that La. C.Cr. P. art 611 provides the following:

> All trials shall take place in the parish where the offense has been committed, unless the venue is changed. If acts constituting an offense occurred in more than one place, in or out of the parish or

---

over Count 4 of the bill of information. And, accordingly, this claim is without merit.

Lastly, the defendant, through counsel, requested an out-of-time appeal. The defendant alleges that trial counsel failed to safeguard his right to appeal. However, as a result of the defendant's guilty plea, he waived his rights to trial and appeal. Thus, the defendant cannot seek an out-of-time appeal.

For the foregoing reasons that I've just stated, the application for post-conviction relief is denied.

[13] *Id.*

state, the offense is deemed to have been committed in any parish in this state in which any such act or element occurred.

As referenced by the trial court, the Louisiana Fifth Circuit Court of Appeal in *State v. Hester,* 1999-426 (La. App. 5 Cir. 9/28/99), 746 So. 2d 95, applied Article 611 when addressing a similar jurisdictional issue. In *Hester,* the female victim was abducted from Metairie, driven to River Ridge, and then to New Orleans, where she was raped. The defendant was tried and convicted of aggravated rape in Jefferson Parish, even though the sexual intercourse occurred in Orleans Parish. The Fifth Circuit found that venue was proper in Jefferson Parish because the incident began in Jefferson Parish. *See Hester*, 1999-426, pp. 28-29, 746 So.2d at 113-14.

The Louisiana Third Circuit Court of Appeal also addressed a related jurisdictional/venue issue in *State v. Anderson,* 2004-30 (La. App. 3 Cir. 7/7/04), 877 So.2d 336. The *Anderson* case involved a multiple murder case in which the victims were residents of St. Landry Parish; however, their bodies were found in Evangeline Parish. The defendant claimed improper venue, arguing that the State did not establish that any element of the offenses took place in Evangeline Parish. The Third Circuit Court of Appeal, in finding that venue was proper, explained that:

> Louisiana law does not address the present situation of when it cannot be determined where the crime actually occurred. 'Where the law is silent, it is within the inherent authority of the court to fashion a remedy which will promote the orderly and expeditious administration of justice. La. C.Cr.P. art. 17; *State v. Edwards*, 287 So.2d 518 (La. 1973).' *State v. Mims*, 329 So.2d 686, 688, (La. 1976).

*Anderson,* 2004-30, pp. 13-14, 877 So.2d at 344. The Third Circuit Court of Appeal continued:

The venue articles require the prosecution of the case in the parish where the crime has been committed. If the location cannot be determined, it would serve as an injustice to hold that since the State could not establish the exact geographical location of a murder, an accused cannot be tried. The Louisiana Code of Criminal Procedure does not address the factual circumstances presented by this case. Therefore, this court must fashion a remedy which promotes the administration of justice. The testimony indicates both victims were found in Evangeline Parish. Both victims had been shot and their legs cut off. Other testimony was introduced to establish that the victims lived in St. Landry Parish and the pet of one of the victims was found in St. Landry Parish dead from a gunshot wound. However, the crime scene of the murders has not been located. As noted, Defendants raised objections to venue in Evangeline Parish arguing that the State failed to meet its burden of proving that any of the elements of the crime of first degree murder occurred in that parish. There is no question that the bodies were found in Evangeline Parish. There is also no question that the condition of the bodies, when found, indicate[s] that the deceased did not die from natural causes, but in fact met their deaths in a violent manner.

Louisiana Code of Criminal Procedure Article 3 provides that, "[w]here no procedure is specifically prescribed by this Code or by statute, the court may proceed in a manner consistent with the spirit of the provisions of this Code and other applicable statutory and constitutional provisions." While La. C. Cr. P. art. 611 provides generally for venue in criminal cases by placing the burden on the State to prove venue by a preponderance of the evidence, it does not provide for the unique situation where the body of a person is found that is apparently the victim of a homicide in a particular parish, yet there is no evidence of where the offense occurred. Louisiana Constitution Article 1, § 16 provides in part that, "Every person charged with a crime ... is entitled to an impartial trial held in the parish where the offense or an element of the offense occurred. "An element of first degree murder is the "killing of a human being." La. R.S. 14:30. It is obvious in this case that the condition of the bodies of [the victims], found in Evangeline Parish, indicate that they were killed. The trial court could logically infer that [the victims] were killed where their bodies were found. Further, pursuant to the authority of La. C.Cr.P. art. 3[14], it would serve the orderly administration of justice for this court to adopt the presumption that the killing of [the victims] occurred in Evangeline Parish, where their bodies, the condition of which indicate foul play, were found and, therefore, venue is proper in Evangeline Parish.

---

[14] La. C.Cr.P. art. 3 states that "[w]here no procedure is specifically prescribed by this Code or by this statute, the court may proceed in a manner consistent with the spirit of the provisions of this Code and other applicable statutory and constitutional provisions."

2004-30, pp. 14-15, 877 So.2d at 345.

Similarly, in the matter *sub judice*, the incident began in Orleans Parish, where the victim was taken in Defendant's vehicle without consent. Defendant argues that K.H.(2)'s statement to NOPD wherein she suggests that Defendant may have driven on Interstate 10 West towards the airport indicates that the rape may have occurred in Jefferson Parish. However, the un-contradicted fact is that the precise location of the rape is unknown. Elements of the offense of forcible rape include when the victim is prevented from resisting by force or the threat of physical violence. *See* La. R.S. 14:42.1(A)(1). Here, K.H.(2) did not recall entering Defendant's truck willingly and only provided consent to be driven back to her hotel room. Given that K.H.(2) had no recollection of willingly entering Defendant's truck; that she did not consent to be driven anywhere other than to her hotel; and that she felt threatened by Defendant in the event she resisted the rape, a logical inference can be inferred that elements of the rape—the threat of physical force and the inability to resist—occurred in Orleans Parish, the jurisdiction where she was abducted. Therefore, in alignment with *Anderson*, *supra,* a straightforward application of La. C.Cr.P. art. 611, and pursuant to the authority of La. C.Cr.P. art. 3, we conclude that the orderly administration of justice conferred jurisdiction in Orleans Parish Criminal District Court over the 2008 forcible rape charge. Accordingly, this assigned error is without merit.

### Counseled Error Number 2; Pro-Se Errors Number 2 & 3: Timely Prosecution of the 2002 Second-Degree Kidnapping Charge

In this claim, Defendant argues that the trial court lacked subject matter jurisdiction over the February 9, 2002 kidnapping charge because the bill of information was brought on May 11, 2010, more than two years after the

17

expiration of the State's six-year prosecutorial statute of limitation as allowed under La. C.C.P. art. 572.[15]    Defendant maintains that the trial court erred in finding this error lacked merit in his 2014 application for post-conviction relief by relying on La. C.Cr.P. art. 930.4(B) to bar any review as to the merits, reasoning that Defendant presented no excuse as to why the claim had not been raised in in advance of the guilty plea proceedings. La. C.Cr.P. art. 930.4(B) provides, in pertinent part, that "[i]f the application alleges a claim of which Defendant had reasonable knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court shall deny relief."  As referenced herein, Defendant sought supervisory writ review of this same issue before the Supreme Court in *State ex rel. Puderer*, 2015-1359, 202 So.3d 978.  In denying relief, the Supreme Court adopted the trial court's reasons for judgment, citing La. C.Cr.P. art. 930.4(B) and 930.4(F)[16] in finding that Defendant had failed to preserve his right to challenge the timeliness of the prosecution where the claim should have been raised in proceedings leading to the conviction, and Defendant's failure to raise claim prior

---

[15] La. C.Cr.P. art. 572 states, in part, the following:

   A.  Except as provided in Articles 571 and 571.1, no person shall be prosecuted, tried, or punished for an offense not punishable by death or life imprisonment, unless the prosecution is instituted within the following periods of time after the offense has been committed:

       (1) Six years, for a felony necessarily punishable by imprisonment at hard labor.

[16] La. C.Cr.P. art. 930(F) states the following:

If the court considers dismissing an application for failure of the petitioner to raise the claim in the proceedings leading to conviction, failure to urge the claim on appeal, or failure to include the claim in a prior application, the court shall order the petitioner to state reasons for his failure.  If the court finds that the failure was excusable, it shall consider the merits of the claim.

to application for post-conviction was inexcusable.[17]  *Id.*, p. 10, 202 So.23d 978 So.3d at 982.  Accordingly, this Court declines to review this error as the Supreme Court has already decided this issue and determined that it lacks merit.

***Counseled Error Number 3; Pro-Se Error Number 6: Was Defendant's Plea Knowingly and Voluntarily Entered Based on the State's Jurisdiction Over the 2008 Forcible Rape Charge and the Timeliness of the 2002 Second-Degree Kidnapping Charge***

Defendant asserts that his entire guilty plea should be set aside because it was not knowingly and voluntarily entered.  He argues that he would not have pled guilty had he known that jurisdiction/venue was allegedly improper for his 2008 forcible rape charge and that the time limitations had expired for the 2002 second-degree kidnapping charge.  However, this Court has already determined that Defendant's claims that Orleans Parish Criminal District Court lacked jurisdiction over his 2008 forcible rape charge and his 2002 second-degree kidnapping prosecution lack validity.  Therefore, any review as to whether Defendant's guilty plea was knowing and voluntary takes place in the context that all of Defendant's convictions were valid.

As explained in *State ex rel. Turner v. Maggio*, 463 So.2d 1304, 1307-08 (La. 1985), "[a] guilty plea agreement, by its very nature, represents for a defendant a choice between unpleasant alternatives."  Our review of the guilty plea transcript reflects that Defendant entered his guilty pleas knowingly and voluntarily pursuant to a negotiated favorable bargain.  On appeal, Defendant makes no objective showing that his guilty plea sentencing agreement was not a

---

[17] The trial court also found that Defendant's guilty plea waived Defendant's right to assert a statute of limitations defense.  *See State ex rel. Puderer v. State*, 2015-1359, p. 10, 202 So.3d at 982.

favorable bargain such that he would not have knowingly and voluntarily entered the agreement. As such, this error does not have merit.

We now review Defendant's uncounseled *pro se* assignments of error.

**Pro-Se Error Numbers 4 & 5: Ineffective Assistance of Counsel Claims**

Defendant represents that his trial counsel was ineffective in allowing him to plead guilty to the 2002 second-degree kidnapping charge and the 2008 forcible rape charge based on the trial court's lack of jurisdiction; and in conjunction therewith, counsel's failure to seek supervisory review of the trial court's denial of Defendant's pre-trial motion to quash the 2008 forcible rape charge on jurisdictional grounds. At the outset, this Court established that issues preserved for appellate review of Defendant's out-of-time appeal were limited to errors patent, jurisdictional defects, and whether Defendant's plea was knowing and voluntary. Accordingly, Defendant's ineffective assistance of counsel claims exceed the scope of our appellate review as they were fully considered and disposed of in prior post-conviction proceedings. *See State ex rel. Puderer*, 2015-1359, p. 1, 202 So. 3d at 979, where the Court found that "[Defendant] fails to show that he was denied the effective assistance of counsel during plea negotiations under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." Moreover, to the extent that Defendant's ineffective assistance of counsel claims raise jurisdictional defects, this Court's holdings that Orleans Parish Criminal District Court had jurisdiction over the 2008 forcible rape charge and that Defendant failed to preserve his right to challenge the timeliness of his 2002 second-degree kidnapping prosecution effectively moot Defendant's arguments that jurisdictional defects overlooked by ineffective

counsel invalidated the plea agreement.    Hence, Defendant's *pro se* ineffective assistance of counsel errors are not meritorious.

### *Pro-Se Error No. 7: Guilty Plea Not Knowingly and Intelligently Entered as to Defendant's Knowledge of Parole Eligibility and Diminution of Sentence*

In this alleged error, Defendant contends that he did not knowingly and intelligently plead guilty because he was led to believe that he would be parole eligible in two years and eligible for diminution of sentence.[18]    However, Defendant's *Boykin* colloquy refutes this contention.    The transcript reveals the following exchange between Defendant and the trial court:

THE COURT:

Have the acts constituting the offenses to which you are pleading
guilty been explained to you?

THE WITNESS:

Yes ma'am.

THE COURT:

As well as the sentencing range for the forcible rape carries a penalty
of 5 to 40 years in the department of corrections.  Do you understand
that, sir?

THE WITNESS:

Yes, ma'am.

THE COURT:

And at least two of those sentences – two years of that sentence shall
be imposed without any benefit of parole, probation, or suspension of
sentence.  Do you understand that, sir? [19]

---

[18] This specific claim has not been previously raised.  In his 2014 post-conviction application, Defendant claimed that he was induced and coerced into a plea bargain by his attorney, who he claimed advised him that he would only serve "one third of his sentence for parole eligibility," and would be eligible to earn Diminution of Sentence (good time)."

[19] In 2002 and 2008, La. R.S. 14:42.1(2)(B) contained a provision that two years of the sentence shall be imposed without any benefit of parole, probation, or suspension of sentence.  That provision was eliminated by Acts 2015, No. 256 § 1.

THE WITNESS:

Yes, ma'am.

THE COURT;

And do you also understand that the penalty for the second-degree kidnapping carries a penalty of 5 to 40 years in the department of corrections and, again, at least two of those will be served without any benefit of probation, parole, or suspension of sentence. Do you understand that?

THE WITNESS:

Yes, ma'am.

THE COURT:

And do you understand, Mr. Puderer, that as to each count, the two counts of forcible rape and to the two counts of second degree kidnapping, that your sentences will be 20 years as to each of those counts in the department of corrections? I will run those concurrent with each other and give you credit for any time you've served and that each of those counts is, in fact, a crime of violence. Do you understand that, sir?

THE WITNESS:

Yes, ma'am.

We find the trial court's statements are correct statements of law and, as such, cannot be said to have misled Defendant. Moreover, any calculation of Defendant's eligibility for early release based on diminution of sentence for good behavior falls within the exclusive purview of the Department of Corrections. La. R.S. 15:571.3; *State v. Solomon,* 2011-0236 (La. App. 4 Cir. 11/23/11), 80 So. 3d 605 (2011). Therefore, "even if the guilty plea transcript contained some evidence of a promise of 'good time' eligibility in return for [the defendant's] guilty plea, that promise would have been unlawful on its face." 2011-0236, pp. 6-7, 80 So. 3d at 609. Accordingly, this alleged error is not meritorious.

***Pro-Se Error Number 8: Denial of Right to Enter Alford Plea***

Defendant claims in this error that the trial court improperly denied his request to enter an *Alford* plea by its acceptance and entry of an unconditional guilty plea, notwithstanding the trial court's awareness of Defendant's continued profession of his innocence. However, the appellate record does not support that Defendant requested to enter a plea under *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). As discussed in *State v. Jackson*, 2001-1268, p. 6 (La. App. 4 Cir. 2/6/02), 809 So.2d 1127, 113, "[a] defendant's decision to plead guilty when confronted with the choice between a trial, knowing that the evidence substantially negates his claim of innocence, and a plea of guilty, which limits the maximum penalty he may receive, has been called a "best interests plea," or simply an "*Alford* plea."" In support of this claim, Defendant cites to a portion of the *Boykin* transcript that merely shows an "off-the-record bench conference." However, the transcript does not show that Defendant or his attorney used the words or referenced an "*Alford* plea;" additionally, the appellate record does not reflect that the trial court ruled on a request for an *Alford* plea. Regardless, had Defendant requested to enter an *Alford* plea, the trial court would not have been obligated to accept the plea. The trial court has discretion to reject any plea bargain, even if the parties are in complete agreement as to its terms. Indeed, as the *Alford* court itself explained:

> Our holding does not mean that a trial judge must accept every constitutionally valid guilty plea merely because a defendant wishes so to plead. A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court, although the States may by statute or otherwise confer such a right. Likewise, the States may bar their courts from accepting guilty pleas from any defendants who assert their innocence.

91 S. Ct. at 168, n. 11.

Accordingly, this assigned error is meritless.

### Pro-Se Errors Number 9 and Number 10: Notice to Defendant of Sex Offender Registration and Notification Requirements

In these *pro se* errors, Defendant argues that his guilty plea agreement should be invalidated because he did not enter a knowing and intelligent plea premised on the trial court's alleged failure to provide written notification to Defendant of the sex offender registration and notification requirements prior to accepting his guilty plea; and in conjunction therewith, his counsel was ineffective for failing to notify Defendant of the sex offender registration and notification requirements.

La. R.S. 15:543 requires that written notice be provided to a defendant convicted of a sex offense.[20] The trial court was not required to give notice to Defendant of the sex offender registration requirements prior to accepting his guilty plea, but rather, upon his conviction. *State v. Bazile,* 47,412, p. 6 (La. App. 2 Cir. 9/26/12), 206 So. 3d 560, 563. Nevertheless, in this matter, Defendant was notified of his requirement to register as a sex offender prior to entering his plea. Specifically, the felony-sex offender waiver of rights form confirms Defendant's initials, verifying his understanding that his guilty plea required that he "must register with the Criminal Sheriff's Office and/or the New Orleans Police Department." Additionally, during Defendant's *Boykin* colloquy, the following exchange occurred:

---

[20] La. R.S. 15:543 was modified by Acts 2007, No. 460 § 2. Prior to this change, the trial court was required to provide written notification to any person charged with a sex offense of the registration and notification requirements. The modification changed the requirement so that any person convicted of a sex offense must receive notification.

THE COURT:

Mr. Puderer, do you understand that by pleading guilty in this matter that you must register with the criminal sheriff's office and/or the New Orleans police department and/or the police in any jurisdiction when you are released, sir, and that this is a lifetime registration as a sexual offender?  Do you understand that?

THE WITNESS:

Yes, ma'am.

The record clearly rebuts Defendant's argument that he was not notified regarding the sex offender notification and registration requirements prior to entering his guilty plea.  Accordingly, these assignments of error are meritless.

## <u>CONCLUSION</u>

Based on the foregoing reasons, we affirm Defendant's guilty plea convictions and the sentence imposed.

**CONVICTIONS AND SENTENCE AFFIRMED**